# Richmond.

## PLUNKETT v. BRYANT & OTHERS.

### November 19, 1903.

### Absent, Buchanan, J.[*]

1. PARTITION—*Possession by Surviving Husband—Suit by Heir—Substitute for Ejectment.*—Although the lands of a deceased wife who never had a child born alive are in the possession of her surviving husband, a bill for partition of such lands may be filed by one of her heirs against the surviving husband, and the remaining heirs. Such a suit is not a substitute for an action of ejectment.

2. SPECIFIC PERFORMANCE—*Parol Contract for Sale of Land—When Enforced—Improvement of Wife's Lands.*—In order to warrant a court of equity in decreeing specific performance of a parol contract for the sale of land, the agreement must be certain and definite in its terms, the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved, and the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. The act or acts of part performance must be of such an unequivocal nature as of themselves to imply the existence of such a contract, and until such acts have been charged parol evidence will not be received to establish the terms of the contract. The erection by a husband of buildings on his wife's land on which they resided until her death cannot be regarded as an act of such an unequivocal nature as of itself to be evidence of an agreement that he should be compensated therefor.

Appeal from a decree of the Circuit Court of Nelson county, pronounced March 12, 1902, in a suit in chancery wherein one

[*]Judge Buchanan was detained at home by sickness.

of the appellees was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*Caskie & Coleman,* for the appellant.

*S. B. Whitehead,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This suit was brought by the appellee, A. G. Bryant, for a sale of certain lands owned by Patsie Plunkett in her lifetime, and a division of the proceeds between himself and the other heirs. The bill alleges that Patsie Plunkett died intestate and childless, the owner of seventy-four acres of land, which she had derived from her father's estate, leaving her husband, J. D. Plunkett, surviving, who was in possession of the said land. The surviving husband, who, with others, was made a party defendant, demurred to this bill, and, without waiving his demurrer, filed an answer, which he asked should be treated as a cross bill. The allegations of this cross bill are that the lands in question, derived by Patsie Plunkett from the estate of her father, were without buildings, except a tobacco house, and that she was without the means of erecting improvements; that respondent was the guardian of his son, C. H. Plunkett, by a former marriage, and, as such, had in his hands belonging to his ward between $600.00 and $700.00; that his wife proposed that, if respondent would use his own money or the money of his ward in erecting a dwelling and other necessary buildings upon the land, she would, by her last will and testament, give and devise the land to respondent for life, with remainder to his ward; that respondent accepted this proposition, and did erect upon the land a dwelling and other buildings, at a cost of more than $500.00, using for the purpose the money of his

ward, theretofore mentioned as being in his hands; that the
wife knew the money thus used belonged to the ward, and was
always willing to abide by the agreement, in pursuance of which
it was used for buildings; that, in March, 1894, she had pre-
pared a will giving the property to respondent for life, upon
condition that he did not marry again, with remainder of part
thereof to the ward C. H. Plunkett, and the residue subject to
the disposal of respondent; that this will failed for lack of the
requisite subscribing witnesses. There was no writing evidenc-
ing this alleged agreement between J. D. Plunkett and his wife,
nor does it appear when it was entered into. The heirs of Patsie
Plunkett demurred to the cross bill, and, without waiving their
demurrer, filed an answer denying its allegations, and especially
denying the agreement alleged therein; saying that they all
lived within a few miles of Patsie Plunkett during her life,
and had never had an intimation of the claim set up by J. D.
Plunkett until his cross bill was filed.

Subsequently, C. H. Plunkett, the former ward of J. D.
Plunkett, with the leave of court, filed his petition, in which he
reiterates as true the averments made by his father with respect
to the alleged agreement set up by the latter in his cross bill.
He, however, insists that should the court refuse to grant the
prayer of the cross bill by compelling the heirs of Patsie
Plunkett to convey the land in question to J. D. Plunkett and
petitioner, in accordance with the alleged agreement, that the
money of petitioner used in erecting improvements should be
ascertained, and the land subjected to its satisfaction. The
heirs of Patsie Plunkett demurred to this petition, and filed an
answer denying its allegations.

On the 6th of September, 1901, a decree was entered over-
ruling the demurrer of J. D. Plunkett to the original bill. And
on the 12th of March, 1902, a decree was entered sustaining
the demurrer of the heirs of Patsie Plunkett to the cross bill
filed by the defendant, J. D. Plunkett, and overruling their de-

murrer to the petition filed by C. H. Plunkett, giving the latter leave to amend his petition with a view to affording him such relief as he might appear to be entitled to. From this last mentioned decree J. D. Plunkett has taken this appeal.

There are but two assignments of error. The first calls in question the action of the court in overruling the demurrer of appellant to the original bill filed by appellees, asking for a sale of the land and a division of the proceeds. This demurrer was properly overruled. The suit is not, as contended, a substitute for an action of ejectment. It was brought by one of the heirs of Patsie Plunkett, deceased, against her late husband, J. D. Plunkett, and the remaining heirs at law for partition of the land whereof Patsie Plunkett died seized and possessed. The bill alleges that the land in question was the property of Patsie Plunkett, and that no children were ever born to her. These allegations must be taken as true on demurrer, and they exclude the idea that J. D. Plunkett has any interest in the property as tenant by the courtesy or otherwise. The allegation is distinct that the heirs at law of Patsie Plunkett are the owners of the property. The interest of a party in the subject matter must appear, or be made to appear, before he can be heard to make defence.

The second assignment of error is to the action of the court in sustaining the demurrer of appellees and dismissing the cross bill filed by appellant. This demurrer was sustained upon the ground that the cross bill sought specific performance of a verbal agreement, and that the facts alleged were not sufficient to take the contract from under the operation of the statute of parol agreements. Courts of equity, in their efforts to do complete justice and prevent fraud, have in certain cases relaxed the operation of the statute and decreed the specific performance of a parol agreement for the sale of land where the contract has been clearly and distinctly proved, and part performance in pursuance of the agreement established. There is no

doubt that a person may, by a certain and definite contract, bind himself to dispose of his estate by will in a particular way, and that such a contract, in a proper case, will be specifically enforced in equity; that is to say, the property will be held charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser with notice of the agreement, as the case may be, and a conveyance or accounting directed in accordance with the terms of the agreement. *Burdine* v. *Burdine,* 98 Va. 515; *Hale* v. *Hale,* 90 Va. 728; *Wright* v. *Puckett,* 22 Gratt. 370. In cases, however, involving an appeal to this equitable doctrine, an observation of the learned judge, in the case last cited, should be borne constantly in mind. He says: "The statute of frauds was founded in wisdom and sound policy. Its primary object was to prevent the setting up of pretended agreements and then supporting them by perjury. But besides these direct objects, there is a manifest policy in requiring contracts of so important a nature as the sale and purchase of real estate, to be reduced to writing; since, otherwise, from the imperfection of memory and the honest mistakes of witnesses, it must often happen either that the specific contract is incapable of exact proof, or that it is unintentionally varied from its original terms."

The principles upon which a court of equity will avoid the statute of frauds and enforce a parol agreement for the sale of land are well settled. They are briefly but clearly stated in *Wright* v. *Puckett, supra,* to be as follows: "1st. The parol agreement relied on must be certain and definite in its terms. 2nd. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3rd. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. These requisites must concur before a court of equity will decree specific execution." The act or acts of part performance

must be of such an unequivocal nature as of themselves to be evidence of the execution of an agreement. They must be such as could be done with no other view or design than to perform the agreement. They must unequivocally refer to and result from an agreement and be such as the party would not have done unless on account of that very agreement, and with a direct view to its performance. The act must be sufficient of itself, without any other information or evidence to satisfy the court from the circumstances it has created, and the relations it has formed, that they are only consistent with the assumption of the existence of a contract, the terms of which equity will enforce. Until acts are alleged which, of themselves, imply the existence of such a contract, parol evidence to show its terms is inadmissible. *Frome* v. *Dawson,* 14 Ves. 387; *Maddison* v. *Alderson* (House of Lords), 8 App. Cas. 467; *Phillips* v. *Thompson,* 1 Johns Ch. 131; *Pierce* v. *Catron,* 23 Gratt. 588; *Hale* v. *Hale, supra.*

In the light of these well-settled principles, we are of opinion that the cross bill filed by appellant was properly dismissed. As already seen, the alleged agreement was between appellant and his wife, living together on the wife's maiden land. The allegation is that appellant expended, during his wife's lifetime, about $500.00, belonging to his son and ward, in the erection of certain buildings upon his wife's land, with the understanding and promise on her part that she would make a will giving him the lands and improvements for life, with remainder to his son in fee. The allegation is that appellant fully performed his part of the contract by erecting the buildings. The erection by the husband of the buildings mentioned upon his wife's maiden land, that she was in possession of until her death, cannot be regarded as an act of such an unequivocal nature as of itself to be evidence of an agreement that he should be compensated therefor. It can hardly be said that such an act could be done with no other view or design than to perform a pre-

vious agreement on his part. Such an act by a husband does not necessarily refer to or result from an agreement with the wife, and is not such an act as the husband would not have performed, except as the result of an agreement. On the contrary, husbands live with their wives on the lands of the latter, and spend their lives in working, managing and improving such lands, without any agreement for compensation. From such acts a contract on the part of the wife to compensate the husband cannot be implied. Such acts are not sufficient of themselves, without any other information or evidence to satisfy the court, from the circumstances it has created and the relations it has formed, that it is only consistent with the assumption of the existence of a contract, the terms of which equity will enforce. Until such acts are alleged as of themselves imply the existence of a contract, parol evidence to show its terms is inadmissible.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*