𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

REED AND OTHERS v. REED AND OTHERS.

November 19, 1908.

1. INSANE PERSONS—*Adjudication—Lucid Intervals—Conveyance of Property.*—Although a man may have been adjudged insane and confined in an insane hospital and afterwards discharged simply as "improved," and though subsequently subject to frequent fits of epilepsy, if, during the periods when he was free from insanity, he could perform all the ordinary duties of life, such as are set forth in the record of the case in judgment, he could also during such periods make a valid contract for the disposition of his property.

2. SPECIFIC PERFORMANCE—*Parol Contract to Convey Land—Part Performance.*—In order to justify a court of equity in the enforcement of a parol contract for the sale of land on the ground of part performance, the contract must be certain and definite in its terms, the acts of part performance relied on must refer to, result from or be made in pursuance of the contract proved, and the contract must have been so far executed that a refusal of full . execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. In the case in judgment all of these requirements have been fulfilled.

3. SPECIFIC PERFORMANCE—*Parol Contract to Sell Land—Part Performance—Services of Peculiar Nature as Consideration—Case in Judgment.*—Where, in a parol agreement for the purchase of real estate, the consideration consists of services to be rendered which are of such a peculiar character that it is impossible to estimate the value to the vendor by a pecuniary standard, and neither party intended so to measure them, the performance of the services will entitle the vendee to specific performance, notwithstanding the contract was by parol, when the other requisites for specific performance exist. In the case in judgment, a sister spent sixteen and a half years in caring for her afflicted brother who had insane spells several times during a year which would sometimes last for several weeks, when he would have to be handcuffed and chained to the floor, and whose condition was at such times horrible and repulsive, and the entire

burden of feeding, washing and caring for him fell upon this sister. The rendition of such services by the sister in pursuance of a parol contract to convey to her his land is such part performance of the verbal contract on her part as to warrant a decree for specific performance.

Appeal from a decree of the Circuit Court of Rockbridge county. Decree for one of the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Timberlake & Nelson,* for the appellants.

*G. D. Letcher* and *Moore & Moore,* for the appellees.

KEITH, P., delivered the opinion of the court.

J. H. Reed and others, claiming to be heirs at law of Alexander Reed, deceased, filed their bill in the Circuit Court of Rockbridge county, in which they state that Alexander Reed died seized and possessed of sundry personal and real estate. The real estate consisted of an undivided five-eighths interest in a tract of land containing about eighty-five acres, the other three-eighths interest being owned by his sister, Indiana Reed; and that the personal estate amounted to $373.29. The object of the bill was to have a partition of the real estate and a distribution of the personal estate among those entitled thereto. Indiana Reed, a sister of Alexander Reed, and Thomas A. Sterrett, his administrator, were made parties defendant.

Indiana Reed filed an answer and cross-bill, in which she states that her brother, Alexander, was in April, 1885, adjudged a lunatic, and admitted to the lunatic asylum at Staunton, Va.; that he soon recovered his mind and wrote to her most earnest letters and made urgent appeals to her and to his brothers to get him released, that he was in a most distressed

condition by reason of his surroundings; that respondent went to see him and he renewed his appeals in person, and agreed that if she would get him out of the asylum, take him home with her and furnish him a living the rest of his life and take care of him, he would give her all of his property real and personal; that she finally agreed to accept his offer, and in company with her brother, Hezekiah, went to Staunton and brought her brother, Alexander, home with her; that upon his return he was overjoyed, saying that he believed he would have died had he remained longer at the asylum, and repeated the bargain which he had theretofore made, and she agreed with him that she would never let him be taken back, and would take care of him the remainder of his life; that she would not have made this agreement under any circumstances with a stranger, as she did not consider all the property he had, real and personal, in any way equivalent in value to the trouble and care that his condition promised to impose upon her, but as a sister she with pleasure agreed to and accepted the proposition made by her brother, and from that day to the day of his death she faithfully carried out the same, giving him every attention and furnishing him every comfort that her humble means and the property received from him permitted. The answer further avers that, after she had acquired title to the real and personal property of Alexander Reed, she fully carried out and performed said agreement on her part, and held full, entire and exclusive possession of the property, real and personal, in all respects as her own, and the same was thereafter regarded as hers by Alexander Reed and all cognizant of the facts; that, being hers, she repaired the house and the out-houses, barn and stable, and made various new and permanent improvements, both to the buildings, fences and the land, and did and caused to be done a great amount of advantageously directed and beneficial labor thereon, in which improvements the little work done by Alexander Reed was not effective, and contributed little if anything.

The cross-bill avers that the contract was made between respondent and her brother when he was clothed in his right reason and in law able and competent to contract, and when he thoroughly understood the nature of the contract and its effect. The cross-bill then goes on to retail with much particularity the services rendered by respondent to her brother, his frequent attacks of insanity, when he would have to be chained to the floor to prevent his doing injury to himself and others; the watchful care with which she soothed him during the night, going scores of times to talk with him, adjust his bedclothing and render to him the unremitting attention which would be required by a child. These attacks would last sometimes for days, weeks and even months, after which he would recover his mind, and for intervals of longer or shorter duration be perfectly sane.

The plaintiffs' answered this cross-bill, and by their answer put all of its material allegations in issue. The case was referred to a commissioner to ascertain what personal property Alexander Reed died possessed of and its value; what real estate he died possessed of and its value; what contract was made between Alexander Reed and Indiana Reed and whether the same was legal and enforceable, and the value of her services; and a statement of the property taken by Thos. A. Sterrett, administrator, and the proceeds therefrom, to whom it belonged, and the proper distribution of said proceeds and the costs.

In answer to these interrogatories, the commissioner made an excellent report, in which the facts are stated so clearly that we cannot do better than to reproduce it in substance.

Dealing first with the mental capacity of Alexander Reed to make the contract, the report states that Alexander Reed had been dangerously insane when committed to the asylum in April, 1885; that he was discharged as "improved" in December of that year, and that during all the rest of his life he was subject to frequent epileptic fits of more or less severity; that

these attacks would last from two or three days to sometimes as long as two weeks. He seemed during the intervals between the insane spells to have been quiet and inoffensive; to have worked about the farm with a considerable degree of regularity and efficiency; to have gone to the postoffice and blacksmith shop; and to have been fond of reading and interested in religious and political questions; that he voted regularly without his vote ever being challenged, although he voted at a close precinct; that he was regarded as having sufficient mental capacity to make a deed, he together with Indiana Reed and James H. Reed and wife having made a deed to Mary Hunter Reed on February 16, 1892, conveying to said grantee his interest in a tract of sixty-eight acres and five poles which was inherited from his father; that a number of witnesses who knew him well and were in the habit of working with him testified that during the intervals between these insane spells his mind was all right and he knew what he was doing.

From this evidence the commissioner deduced the conclusion that a man who could perform the ordinary duties of life would be capable, during the periods when he was free from insanity, of making a contract involving the disposition of his property.

The commissioner then proceeds to inquire, whether or not the contract made with his sister was such as to remove the case from the operation of the statute of frauds, referring to *Wright* v. *Puckett,* 22 Gratt. 370, and *Plunkett* v. *Bryant,* 101 Va. 818, 45 S. E. 742, where the principles upon which a court of equity will enforce a parol agreement for the sale of land are stated as follows:

1st. The parol agreement relied on must be certain and definite in its terms;

"2nd. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved.

"3rd. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation.

We will not follow the commissioner in his criticism of the evidence of the several witnesses examined. It seems to us that the conclusion reached is supported by the testimony, and that a certain and definite contract has been proved in this case. No contract could be more precise and definite in its terms than that which is stated in the cross-bill. The claim of appellee is that her brother, in order to secure his release from the asylum and a home in which to live in comfort, proposed that he should give to her all of his property of every description, real and personal, upon the consideration that she would provide him with a home during his life, provide and care for him, and that he should not be returned to the asylum. The cross-bill states, it is true, that certain bonds due to Alexander Reed were excepted from this agreement; but that circumstance does not, we think, affect the certainty of the contract. It only diminishes the consideration which he was to pay for the services which were to be rendered to him.

Referring to the second principle upon which a parol agreement for the sale of land will be enforced—that the acts proved in part performance must be in pursuance of the agreement proved—the report states, that the only reasonable explanation that can be made of the sister's taking the brother from the asylum and keeping him at home is that she did it at his request and pursuant to some agreement made with him; that it is hardly conceivable that she would, as a mere volunteer, assume the burden and danger of caring for a man, even though her brother, who was subject to such horrible and dangerous spells of insanity as this man had; but that she was inspired to a large degree by her sisterly affection for her brother in the care that she gave him, as the little property he had was very poor compensation for the services rendered to him. The commissioner concludes, therefore, upon the evidence, that the acts proved were done in pursuance of the agreement which had been entered into.

Coming then to the third requirement—that the refusal of full execution would operate a fraud upon the party and place

her in a situation which does not lie in compensation—the report shows that Miss Indiana Reed, who is now quite an old woman, has spent sixteen and a half years of her life in caring for her afflicted brother; that he had insane spells several times during a year which would sometimes last for several weeks; that he would have to be handcuffed and chained to the floor, and his condition was at such times horrible and repulsive, and the entire burden of feeding, washing, and caring for him fell upon his sister; that none of his other relatives, except his brother, H. J. Reed, who died sometime prior to Alexander, gave her any assistance in caring for him during these spells. The report states that it was claimed by defendants' counsel that Alexander Reed was an industrious and efficient laborer on the farm, and that his labor was worth the care and attention bestowed upon him; but the commissioner was of opinion, that it was immaterial whether he was an efficient or an inefficient laborer, as what he could have done during his lucid intervals would have been insufficient compensation for the care rendered to him during his insane spells.

The conclusion of the commissioner is that the contract between the parties has been proven with certainty, and that it should be enforced; those who are resisting its enforcement having stood by for more than sixteen years without raising a finger to aid this sister who has borne the whole burden and danger of caring for her afflicted brother; and, finally, that they are not hurt by its enforcement, for if he had been allowed to remain in the hospital all of it would have fallen far short of paying his expenses, and there would have been nothing left for his relatives.

We think the evidence fully sustains the conclusions of the commissioner.

In addition to the authorities already cited of *Wright* v. *Puckett,* and *Plunkett* v. *Bryant,* we refer to *Svanburg* v. *Fosseen,* 75 Minn. 350, 78 N. W. 4, 74 Am. St. Rep. 490, 43 L. R. A. 427; "Where, in a parol agreement for the purchase

of real estate, the consideration consists of services to be rendered which are of such a peculiar character that it is impossible to estimate the value to the vendor by a pecuniary standard, and neither party intended so to measure them, the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol."

In *Rhodes* v. *Rhodes*, 3 Sandf. ch. (N. Y.) 279, it was held: "In general, the payment of the consideration is not such a part performance of a parol agreement for the purchase of lands as will relieve it from the operation of the statute of frauds. But where the consideration consists of services to be rendered, which are of such a peculiar character that it is impossible to estimate their value to the vendor by a pecuniary standard and the vendor did not intend to measure them by such a standard, the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol. This was held of an agreement made between two brothers, who had always lived together and owned their property in common, by which the one having a family agreed to provide for and take care of the other—who had no family, and who was subject to epileptic fits—during his life, in consideration that the former should have all the real and personal estate of the latter. Held, also, that the contract was so far certain and reasonable in its terms that it ought to be enforced in equity.

The doctrine of that case is cited with approval by Pomeroy in his work on Contracts, p. 181, where he says that the principle of the case is sound; and further says: "But if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages. Under these circumstances, the rendition of the services, or the procuring

them to be rendered, is a part performance of the verbal agreement, and the case is quite analogous to those in which outlays are made for improvements by a vendee or lessee under a parol contract."

In *Svanburg* v. *Fossen, supra,* Mitchell, J., concurring said: "I think the case is taken out of the statute of frauds by the fact that the consideration which plaintiff has furnished consisted not merely of services in the ordinary sense of the word, but also of the assumption of a peculiar personal and domestic relation to the deceased as a member of their family; and therefore the value of the consideration as a whole is incapable of being estimated by any mere pecuniary standard."

The commissioner's report is fully sustained by the evidence; and, upon the whole case, we are of opinion that it should be affirmed.

*Affirmed.*