Syllabus.

𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

JOHNSON, COMMITTEE, &C., V. MCCOY.

September 14, 1911.

1.  EJECTMENT—*Plaintiff's Title—Common Source of Title.*—Where
    plaintiff and defendant in ejectment claim the land sued for
    from a common source, it is unnecessary for the plaintiff to
    trace his title beyond the common grantor.

2.  LOST INSTRUMENTS—*Evidence of Contents.*—Where a plaintiff
    claims title under a lost or destroyed paper, the proof of its
    former existence, contents, and loss or destruction, must be
    strong and conclusive before a court will permit a title to be
    established by parol evidence.

3.  DEEDS—*Rules of Construction—Case in Judgment—Life Estate—
    Remainder.*—In construing written instruments, it is the duty
    of the court to place itself in the position of the parties at
    the time the instrument was executed, and seek to gather the
    intent from the instrument as a whole, giving to every part
    of it meaning and effect, if possible, and considering the cir-
    cumstances connected with the transaction and the situation of
    the parties. Grammatical construction will not always be fol-
    lowed, and punctuation will only be resorted to when all other
    means fail. The intention of the parties, when it can be
    obtained from the instrument itself, will prevail unless counter-
    acted by some rule of law, and when such intent is apparent
    and is not repugnant to some rule of law, it must prevail over
    mere technical terms. If the instrument contains a clause
    decisively showing the intention of the parties, ambiguities and
    inconsistencies in other clauses will not defeat such intention.
    In the case in judgment, the deed was evidently prepared by an
    illiterate person and should not be controlled by technical rules
    of construction applicable to repugnant stipulations, and, look-
    ing to the deed as a whole and to all the surrounding facts and
    circumstances, the grant of a tract of land to Matilda Smith.
    "With covenants of general warranty, unto the said Matilda
    Smith during her life time then at her deceased to Samuel M.
    Smith her son" vests a life estate in the land in Matilda Smith,
    with a remainder in fee in Samuel M. Smith.

Error to a judgment of the Circuit Court of Buchanan county in an action of ejectment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

*Greever & Gillespie* and *M. O. Litz,* for the plaintiffs in error.

*Chase & Daugherty* and *S. M. B. Coulling,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

In this action of ejectment the defendant in error was plaintiff and the plaintiffs in error were defendants in the lower court. The theory of the plaintiff is that both parties claim the land sued for from a common source, Asheville H. Smith, and hence it was unnecessary for him to trace title beyond the common grantor. *Bolling* v. *Teel,* 75 Va. 493; *Chesterman* v. *Bolling,* 102 Va. 471, 46 S. E. 470; *Casselman* v. *Bialas, ante,* p. 57, 70. S. E. 479.

Plaintiff's chain of title is under a deed from Justus to himself, dated August 8, 1907, and a deed from Matilda Smith to Justus, dated July 31, 1906. He also endeavored to show that Asheville H. Smith devised all of his real estate to his wife, Matilda; and, moreover, that a tract of seventy-five acres, which includes the disputed land, was conveyed to her in fee simple by the heirs at law of her late husband, by deed dated September 23, 1889.

The defendants controvert both propositions. They deny that Asheville H. Smith devised his lands to his wife, and insist that upon a correct interpretation of the deed of September 23, 1889, Matilda Smith took a life estate only in the land, with remainder to her son, Samuel M. Smith, in fee. Matilda was dead at the date of the deed from Justus to

McCoy, and, therefore, if she only had a life estate in the land, McCoy took nothing by his deed.

The elder Smith left a will, which was admitted to probate, and, along with other court records in Buchanan county, was destroyed by fire in 1882. The evidence touching the contents of the will is, however, entirely too vague and uncertain to afford a safe guide to the court in determining what disposition the testator made of his property. Much of the testimony on that point was hearsay, and the witnesses who either claim to have read the will themselves or have heard it read by others speak from memory after the lapse of half a century, and give their opinions as to the legal effect of the instrument rather than its precise language.

It is settled law that where a plaintiff claims title under a lost or destroyed paper, "the proof of its former existence, contents and loss or destruction, must be strong and conclusive before the court will permit a title to be established by parol evidence." *Carter* v. *Wood,* 103 Va. 68, 48 S. E. 553.

The circuit court erred in overruling defendants' motion to exclude the evidence in support of the contention that the testator devised his lands to his wife.

The only other assignment of error which demands our attention involves the construction of the deed of September 23, 1889. The circuit court denied defendants' prayer for an instruction, that the deed conveyed a life estate to Matilda Smith with remainder to Samuel M. Smith in fee; and in lieu thereof told the jury that the former took a fee simple under the deed.

Before undertaking to interpret this deed, reference to some of the elementary principles of construction may be helpful. The expositor, as was said by a learned judge (Mr. Justice Sanderson in *Walsh* v. *Hill,* 38 Cal. 481, 487), should place himself in the position "occupied by the parties

at the time the instrument was executed; then, taking it by its four corners, read it."

It is also a cardinal rule in the construction of all writings, that the intention of the parties, when it can be obtained from the instrument itself, will prevail unless counteracted by some positive rule of law. 2 Devlin on Deeds, sec. 836. And when such intent is apparent, and not repugnant to some rule of law, it must prevail over mere technical terms, "for the intent . . . is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect. . . . If the deed contains a clause decisively showing the intention of the parties, ambiguities and inconsistencies in other clauses of the deed will not defeat such intention." Sec. 837. The circumstances connected with the transaction and the situation of the parties are of value and may always be considered in arriving at their intention. Sec. 839.

"Grammatical construction is not always to be followed, and it has been said that neither false English nor bad Latin will avoid a deed when the meaning of the party is apparent." Sec. 843.

Again, it has been held, that punctuation "is a most fallible standard by which to interpret a writing. It may be resorted to when all other means fail; but the court will first take the instrument by its four corners in order to ascertain its true meaning; if that is apparent, on judicially inspecting the whole, the punctuation will not be suffered to change it." Mr. Justice Baldwin, in *Ewing* v. *Burnet,* 11 Peters 41, 9 L. Ed. 624.

In the light of these fundamental principles, let us approach the construction of the deed in question. Omitting merely formal parts, it reads as follows:

"This deed, made this 23 day of September, 1889, be-

tween . . . heirs at law of Asheville H. Smith, deceased, of the first part, and Matilda Smith of the second part . . , witnesseth: for the consideration of each of one part of the estate of the said A. H. Smith, the party of the first part does grant unto the party of the second part all the following parcel of land, containing 75 acres . . . With covenants of general warranty, unto the said Matilda Smith during her life time then at her deceased to Samuel M. Smith her son."

At the time of this conveyance Matilda Smith and her son Samuel were living together on the seventy-five acres of land. All the other heirs of Asheville H. Smith, by deed of partition, had received in severalty their shares of the lands of their father; and unless this deed is to be construed as conveying a life estate to the mother with remainder to the son, Samuel will take no part of the estate.

We think the deed, though evidently prepared by an illiterate person, bears internal evidence of the fact that it constitutes part of a general scheme for the partition of the lands of the elder Smith among his widow and heirs. The consideration shows that such was its purpose. To give full effect to the intention of the parties in one deed, it was necessary that Samuel M. Smith should occupy the dual relation of grantor and grantee in the same instrument—of grantor to make perfect his mother's life estate in the land, and of grantee to receive from his co-heirs his share of the inheritance. The deed is inartificially drawn. It contains no formal, well defined clauses, and should not be controlled by technical rules of construction applicable to repugnant stipulations. It is composed practically of only one sentence, the granting clause, with a covenant of general warranty parenthetically introduced, followed by a comma and a capital. But the original granting clause applies as unmistakably to the remainder to the son, after the death of the mother, as it does to the life estate of the latter. The

grant to Matilda Smith, in the beginning of the sentence, is not *in* of a fee simple, and consequently is not repugnant to the qualifying language which follows and limits the estate granted to an estate for her life.

As was said in *Pack* v. *Whitaker*, 110 Va. 122, 126, 65 S. E. 496, 498, "there is no repugnancy between the granting and the *habendum* clauses, since the former does not in terms grant a fee simple estate."

In conclusion, we are of opinion that, upon a fair construction of the deed, Matilda Smith took a life estate in the seventy-five acres of land, with remainder to Samuel M. Smith in fee.

It follows from these views that the judgment of the circuit court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*