### Richmond

## McLin & Another v. Richmond & Others.

November 21, 1912.

Absent, Cardwell, J.

1. Parol Gift of Land—*Enforcement—Requisites—Case in Judgment.*—Before a court of equity will decree the performance of a parol gift of land, the following requisites must be made to appear: The agreement relied on must be certain and definite in its terms; the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. The case in judgment does not measure up to these requirements. The agreement relied on is by no means certain and definite-in its terms, and the acts of part performance are not shown to refer to, result from, or have been done in pursuance of any agreement alleged and proved.

2. Lost Instruments—*Deeds—Proof Required—Case in Judgment.*—While courts of equity have jurisdiction to set up lost deeds and wills and to establish titles under them, the proof of the former existence, the loss and the contents of the deed or will should be strong and conclusive before the courts will permit them to be established by parol. It is the policy of the law that title to lands shall pass only by written instruments. Moreover, the evidence should show substantially, but not literally, the contents of the lost instrument. The evidence in the case in judgment does not measure up to these requirements.

Appeal from a decree of the Circuit Court of Lee county. Decree for the defendants. Complainants and one of the defendants appeal.

*Reversed.*

The opinion states the case.

*Pennington Bros.* and *Duncan & Cridlin,* for the appellants.

*B. H. Sewall* and *James W. Orr,* for the appellees.

Keith, P., delivered the opinion of the court.

This bill was filed by R. J. McLin to partition among those entitled the real estate of which Mary J. Richmond died seized and posssessed.

Mrs. Richmond was the daughter of Nathaniel Ewing, who was the father of two children, Mollie (or Mary) J. Ewing, who married H. C. T. Richmond, and Samuel H. Ewing. Nathaniel Ewing, during his lifetime, partitioned his land between his son and daughter, but no partition deed was then made. After Nathaniel Ewing died, which occurred in December, 1876, the partition made by him was consummated by a deed of partition bearing date the 24th day of January, 1878, and executed by Samuel H. Ewing and his wife, and by Mary J. Richmond, nee Ewing, and H. C. T. Richmond, her husband. Under this partition deed Mollie J. Richmond became the owner of the western half and Samuel H. Ewing of the eastern half of the land. Some time after the marriage of Mary J. Ewing and H. C. T. Richmond, Nathaniel Ewing, by deed dated 23rd of November, 1869, which was admitted to record June 1, 1878, conveyed unto H. C. T. Richmond and his wife a parcel of land with a certain dwelling house, cook house, smoke house and chicken house, with a plank fence around the house where they then lived, also half of the spring out of which they were using water, they to have the privilege of building a spring house on the west side of said spring, and to have the privilege of removing the house and fence

at any time they might choose. The property thus conveyed was on the eastern side of the land of Nathaniel Ewing, while by the partition made by him during his lifetime and confirmed after his death, Mrs. Mary J. Richmond was allotted the western side of the farm. Some time after the execution of this deed, the exact date not appearing, the house upon the lot conveyed by the deed of 1869 was moved to the other side of the farm, and H. C. T. Richmond, during his lifetime, claimed that Nathaniel Ewing had executed a deed to him for a lot containing four acres to which this house had been removed, but that the deed had been lost. By the will of H. C. T. Richmond this house and lot were devised to J. S. B. Richmond by the eighth clause of the will, which is as follows:

"I hereby direct that as soon as convenient after my death, my wife, Cornelia J. Richmond, move into the dwelling now occupied by my son, J. S. B. Richmond, this said dwelling being her property, and I hereby devise unto my son, J. S. B. Richmond, the dwelling house and lot and other out buildings incident thereto now occupied by myself and said wife, the said J. S. B. Richmond and his wife having paid me a valuable consideration, his said wife holding a note against me, and in consideration of these premises it is mutually understood and agreed that I make this devise to my said son, the same being accepted by my said son and his said wife pursuant to a deed from Nathaniel Ewing to myself and in full satisfaction of the said note which my said son's wife, Adelia Richmond, holds against me."

McLin, the plaintiff in the bill, purchased the interests of several of the heirs of Mrs. Mary J. Richmond, and his contention is that he has a right to have the lands of which Mary J. Richmond died seized partitioned, and that the house and lot of four acres devised by H. C. T. Richmond to his son, J. S. B. Richmond, was not the property of H.

C. T. Richmond; that he never had any deed for it; that it was a part of the estate of Mary J. Richmond, in which he had acquired an interest by virtue of deeds to him from several of her heirs.

J. S. B. Richmond answered this bill and claimed title to the four acres and the improvements thereon by virtue of the alleged lost deed from Nathaniel Ewing to his father, and by virtue of the fact that the said H. C. T. Richmond, his father, went into possession of the said lot and made valuable improvements thereon, using, occupying and claiming the same as his own, openly, notoriously, continuously and adversely to all others from the time the house was removed and the lot conveyed up to the time of his death; and it is further alleged that by virtue of said deed, coupled with his possession and claim of ownership and improving the same, he had such title to said property as a court of chancery will recognize and uphold, and if necessary will perfect by a decree properly entered upon a hearing of this cause. The answer further states that respondents have no objection to the other lands outside of the house and lot being partitioned among the parties entitled thereto, but they do object to the plaintiff, or any of the heirs or parties interested in the estate of the said Mollie J. Richmond, deceased, claiming or obtaining in any manner any right, title or interest in and to the said house and lot which the respondent, J. S. B. Richmond, claims as his own property under the said eighth clause of the said will.

A third ground of defense is based upon exhibit "A," which is filed with the answer of J. S. B. Richmond and his wife, and is in the following words:

"Whereas J. S. B. Richmond has this day conveyed his undivided interest in the land which descended to him from his mother, Mary J. Richmond, to Robert J. McLin, and whereas there has been raised some question about

the house and lot devised to J. S. B. Richmond and Delia Richmond by H. C. T. Richmond as to the title, whether the same was in the said H. C. T. Richmond or his former wife Mary J. Richmond, therefore: In consideration of the said conveyance, the said Robert J. McLin hereby relinquishes unto the said J. S. B. and Delia Richmond any rights that may be acquired under the said deed from said Richmond and wife in the said lot and house, and if necessary agree to execute a deed of release therefor, for their interest so conveyed to R. J. McLin in said house and lot.

"Given under my hand this 29th day of November, 1909.

"R. J. McLin."

The whole controversy in this case, then, is with respect to the ownership of the house and the lot of four acres of land. The circuit court, by its decree adjudged that the property in dispute belonged to H. C. T. Richmond and passed under his will to his son, J. S. B. Richmond, and that is the question to be reviewed upon this appeal.

Dealing first with what may be termed the deed of release from R. J. McLin to J. S. B. Richmond, it is plain that by its terms it does not convey or release to J. S. B. Richmond the entire property in the house and lot in dispute, but does release that interest in it which R. J. McLin might otherwise claim by virtue of the deed from J. S. B. Richmond to him of date the 29th of November, 1909. It expressly "relinquishes unto the said J. S. B. and Delia Richmond any rights that may be acquired under the said deed from said Richmond and wife in the said lot and house, and if necessary agree to execute a deed of release therefor, for their interest so conveyed to R. J. McLin in said house and lot." So that if, in disposing of other questions raised in this case we shall be of opinion that this house and lot was the property of Mary J. Richmond, and should be partitioned among her heirs at law, the interest

of J. S. B. and Delia Richmond in the house and lot as heirs of Mary J. Richmond would be reserved to them by force of this deed of release executed by R. J. McLin on the 29th of November, 1909.

With respect to the claim of J. S. B. Richmond, that his father had acquired title to the lot in dispute by virtue of a parol gift, it must appear, first, "that the agreement relied on is certain and definite in its terms; second, that the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and, third, that the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation." *Wright* v. *Puckett,* 22 Gratt. (63 Va.) 370; *Plunkett* v. *Bryant,* 101 Va. 818, 45 S. E. 742; *Reed* v. *Reed,* 108 Va. 790, 62 S. E. 792.

We have set forth, *in totidem verbis,* the claim of J. S. B. Richmond, upon the ground of parol gift by Nathaniel Ewing in his lifetime, and it seems to us not to measure up to what the law requires in such cases. So far from stating a contract, certain and definite in its terms, the answer states the claim of J. S. B. Richmond in the most general and indefinite terms—that "H. C. T. Richmond went into possession of the lot and made valuable improvements thereon, using, occupying and claiming the same as his own, openly, notoriously, continuously and adversely to all others from the time the said house was thus removed and the said lot conveyed, which was about the —— day of ——, 1872, up to the time of his death." At that time H. C. T. Richmond was, and had for some years, been the husband of Mary J. Ewing. The deed from Ewing to Richmond of the 23rd of November, 1869, of the dwelling house, cook house, etc., which house was subsequently removed to the lot in controversy, conveys the property to Richmond and his wife, and their heirs forever. Nathaniel Ewing

died December 8, 1876; Mrs. Richmond died in 1884, and H. C. T. Richmond died in 1909. During all the period, therefore, certainly from as far back as 1869 to 1909, about forty years, his possession and acts of ownership may be referred to his marital rights, first as tenant by curtesy initiate, and from the death of his wife as tenant by curtesy consummate for the period of twenty-five years. It is true that during that long period he put improvements upon the property, but the record fails to show that what he did referred to, resulted from, or was done in pursuance of any agreement alleged and proved.

This brings us to a consideration of the claim that Nathaniel Ewing, in his lifetime, executed and delivered to H. C. T. Richmond a deed for the property in question. This court has frequently considered the law bearing upon this question.

In *Thomas* v. *Ribble,* 2 Va. Dec. 321, 24 S. E. 241, this court adopted the opinion of the Corporation Court of the city of Norfolk. We may, therefore, speak of it without being guilty of self-praise, as a very clear and accurate statement of the law. "Where the instrument rises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss, and its contents, should be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. That courts of equity have the jurisdiction to set up lost deeds and wills, and establish titles under them, can certainly not be denied; but it is a dangerous jurisdiction, and so pregnant with opportunities of fraud and injustice that it will not be lightly exercised, nor except upon the clearest and most stringent proof. * * * It is the policy of the law, adopted with a view to prevent frauds, that title to lands shall pass only by written instruments; and the difference is more in name

than in fact between giving effect to a parol conveyance of lands and establishing a title to lands under an alleged lost deed, upon parol testimony of its contents and loss, unless the proof be clear and conclusive. Certainly, the opportunities for fraud are just as great in the one case as in the other." *Barley* v. *Byrd,* 95 Va. 316, 28 S. E. 329.

This record is filled with declarations upon the part of H. C. T. Richmond as to his ownership of the property in question; his last will sets out in detail the mode by which it was acquired, and undertakes to dispose of it as his own by devise to his son; but these self-serving declarations fall short of that conclusive proof which the law demands, and whatever probative value might otherwise have been attributed to them is diminished by the fact, already adverted to, that H. C. T. Richmond was, by virtue of his marital rights, in possession and full control of this property for more than forty years. Nothing is more common than for those so situated to speak of such property as their own, as indeed it was during his lifetime, and sometimes to lose sight of the fact that they are merely the life tenants and not the owners in fee-simple.

The appellees placed a witness upon the stand—a Mr. Pugh—whose testimony is much relied upon. At the time of his examination as a witness he was seventy-seven years of age, and he undertakes to detail a conversation between H. C. T. Richmond and Nathaniel Ewing as follows: "I heard them talking about a piece of land. I could not tell you exactly when it was; it has been a long time; I could not give the date. They were standing right down here at the branch talking, and I came down the branch to where they were, and at that time Mr. Richmond's house was over on the east side of the branch, nearly opposite Nathaniel Ewing's house, and Mr. Ewing wanted Mr. Richmond to move the house over to its present location, and Mr. Richmond did not want to move on uncertainties; and

Mr. Ewing said, 'I will make you a deed to this boundary,' and he showed where the corner was to be at the branch, and to run down the road until it passed the blacksmith's shop, then to go south each end enough to cover four acres, and remarked he would make him a deed to that, and in a few days Mr. Richmond went to moving this house. Mr. Ewing, at the time in talking, after making the statement how it should run, he just pointed to me and said, 'Now you are a witness to this,' but they did not tell me where the lines should run on the south side, but it should be enough to contain four acres."

Mrs. Mary McLin, who was a daughter of H. C. T. Richmond, was introduced to prove that she had seen a deed from Nathaniel Ewing to her father. She states that her father, on the occasion to which she refers, declared that he had a deed which had been made to him by Nathaniel Ewing for the property in controversy; that "he wanted us to see it. He got up and went to the store, came back to the house and asked Mammie if there was a deed in the papers that he had asked her to keep for him. She told him she did not know what was in them; that they were just as he had given them to her. She then went to her trunk and gave him the papers; he looked through them, and he said the papers that he wanted was not there. He went back to the store, and came back and had a paper in his coat pocket. He came through the kitchen and asked me to follow him, and I came out on the porch and sat down; then he asked me to come to him, and I told him to read it and I would listen to it; and he told me then he had been accused of not being honest, and wanted us to see it. I then got up and went to him, stood behind his chair, and as he read the deed I stood at his back. I do not remember anything much about the deed more than when he turned the second page, three lines from the top, he says, 'Now, daughter, I want you to read this.' It was a deed

from Nathaniel Ewing to H. C. T. Richmond individually. I do not know anything more about the deed more than there were names attached to it, three of which I remember, and one I do not. Nathaniel Ewing, Mollie J. Richmond and Samuel H. Ewing, and then another name under this that I do not remember. Below these names were written something that he, nor I either, did not read, about three lines across the paper."

Q. "Please state, as near as you can, what property was conveyed by this deed." A. "The house where he then lived, and so many acres of land, but I do not know how many."

Q. "State whether or not there was anything at the end of the signature of said deed, and if so, what it was?" A. "The word 'seal' was there."

Q. "Describe, as near as you can, the kind of paper upon which the deed you referred to was written?" A. "It was written on legal cap paper with red lines down the sides of it."

Q. "How did the paper appear as to being old or new, upon which the deed was written?" A. "It looked soiled, of course, and looked a little worn, but it was not dirty or anything like that."

Now it appears that this witness did not know the handwriting of Nathaniel Ewing, does not prove that it was acknowledged, and her whole testimony is insufficient to prove a duly executed deed from Nathaniel Ewing. It amounts to no more than proof, of which the record is full in other forms, of the declaration upon the part of H. C. T. Richmond that he had a deed for this property. Why should Samuel H. Ewing's name have appeared upon any such deed? His father was living, and he had no interest whatever in the property which belonged to his father. We do not mean in any degree to impeach the veracity of Mrs. McLin, but assuming the truth of all that she says, its

probative force is insufficient to prove the execution and delivery of a deed for the property in question. *Enderlin Inv. Co.* v. *Nordhagen,* 18 N. D. 517, 123 N. W. 390; *Snyder* v. *Charleston Bridge Co.,* 65 W. Va. 1, 63 S. E. 616, 131 Am. St. Rep. 947; *Johnson* v. *McCoy,* 112 Va. 580, 72 S. E. 123.

In *Nemo* v. *Farrington,* 7 Col. App. 448, 94 Pac. 877, it was held that "parol evidence to establish the contents of a lost deed should be clear and certain, and should show substantially, but not literally, the contents of the deed."

As we have said, the heirs at law of Nathaniel Ewing, by deed of the 24th of January, 1878, partitioned the real estate which had descended to them from Nathaniel Ewing, deceased. In that deed they adopted the partition which had been made by parol by Nathaniel Ewing in his lifetime, and undertake to partition the entire real estate of which Nathaniel Ewing died seized, and the share which was assigned to Mary J. Richmond embraces and includes within its boundaries the property in dispute. By this deed Richmond and his wife took the property on the west of the division line, and Samuel H. Ewing and wife the property on the east side of the division line; and the deed concludes with this expression, "except the exceptions to the said H. C. T. Richmond and Mary J., his wife." The exceptions here referred to are of the property embraced in the deed from Nathaniel Ewing to Richmond and his wife of the 23rd of November, 1869. The exception noted in the deed is not without significance, because it shows the care and exactness with which the partition was carried out. Not only that, but the deed of the 23rd of November, 1869, was shortly thereafter put upon record, and it is, to say the least of it, passing strange if a deed, such as is now asserted, had ever been executed by Nathaniel Ewing, that there was nothing suggested or said with respect to it when the partition deed was executed.

We are of opinion that the decree of the circuit court must be reversed, and the cause remanded for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed.*