CLINCHFIELD COAL CORPORATION v. STEINMAN.

(Circuit Court of Appeals, Fourth Circuit. September 8, 1914.)

No. 1265.

1. SPECIFIC PERFORMANCE (§ 38*) — CONTRACTS ENFORCEABLE — PAROL CONTRACTS FOR CONVEYANCE OF LAND.

To render a parol contract for the conveyance of land specifically enforceable in equity, it must be certain and definite in its terms, the acts of part performance proved must refer to, result from, or be done in pursuance of the contract proved, and it must have been so far executed that damages will not afford full compensation for its breach.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 113; Dec. Dig. § 38.*]

2. EQUITY (§ 263*)—BILL—DISMISSAL FOR INSUFFICIENCY OF ALLEGATION.

Since a bill in equity is required to state only the ultimate facts, a court should be cautious not to dismiss a bill for mere lack of fullness of detail in allegation.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 535-540; Dec. Dig. § 263.*]

3. GIFTS (§ 45*)—PAROL GIFT OF LAND—SUIT TO ESTABLISH TITLE AGAINST SUBSEQUENT GRANTEE.

A bill alleging a parol contract by the owner of land to give a definitely agreed upon tract of the same to his son as an advancement and in full of his share in the father's estate, and that the son at once took and held open and notorious possession and improved and continued to reside with his family on the land, which was subsequently conveyed to him by his father, *held* to state a cause of action to establish his equitable title from the date of the contract as against a later conveyance by his father of mineral rights in the land.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 80; Dec. Dig. § 45.*]

4. GIFTS (§ 45*)—PAROL GIFT OF LAND—SUIT TO ESTABLISH TITLE AGAINST SUBSEQUENT GRANTEE.

That there was some discrepancy between the boundary of the land as described in the alleged parol contract and in the subsequent deed made in confirmation thereof did not justify the dismissal of the bill on demurrer or motion; the land being at the time undeveloped and of small value, and absolute accuracy in such respect not being essential.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 80; Dec. Dig. § 45.*]

5. VENDOR AND PURCHASER (§ 232*)—BONA FIDE PURCHASERS—POSSESSION AS NOTICE OF PRIOR RIGHTS—"NOTICE."

Under the law of Virginia, open and peaceable possession of land under a claim of right is "notice" to a subsequent purchaser of the right or claim of the person in possession both to the surface and minerals thereunder.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540-545, 548-562; Dec. Dig. § 232.*]

6. QUIETING TITLE (§ 29*)—LACHES—SUIT TO ESTABLISH EQUITABLE TITLE TO LAND.

One in the exclusive possession of land under claim of title is not chargeable with laches in not bringing suit to establish his right, so long as no superior title is asserted by another.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 63; Dec. Dig. § 29.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

Suit in equity by the Clinchfield Coal Corporation against A. J. Steinman. Decree for defendant, and complainant appeals. Reversed.

W. H. Rouse, of Clintwood, Va., and E. M. Fulton, of Wise, Va. (H. G. Morison, of Johnson City, Tenn., on the brief), for appellant. J. Hale Steinman, of Lancaster, Pa., and R. T. Irvine, of Big Stone Gap, Va. (J. F. Bullitt, of Big Stone Gap, Va., and A. C. Anderson, of Wise, Va., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The plaintiff in its bill claims an equitable title to a tract of land containing 54 acres derived through successive conveyances from John W. Fleming, holding under an alleged parol gift from his father, Philip Fleming, made in 1870. Under the allegation that the equitable title set up is prior in date to the defendant's legal title from Philip Fleming, dated December 18, 1874, conveying all the coal, iron ore, and other minerals and fire clay in and under a tract of land containing about 1,000 acres, including the land in dispute, the plaintiff asks that the defendant be enjoined from prosecuting his pending action of ejectment brought under the deed of Philip Fleming to him, and that he be required to specifically perform the agreement to convey attributed to his grantor Philip Fleming. The District Judge sustained a demurrer to the original bill, and afterwards under the new equity rules granted a motion to strike from the files the amended bill.

[1] The main question to be decided on the appeal is whether the amended bill sets out a definite and enforceable parol contract of conveyance covering a particular tract of land. The rules on the subject have been considered and stated in many Virginia cases, from Shobe v. Carr, 3 Munf. (Va.) 10, to McLin v. Richmond, 114 Va. 244, 76 S. E. 301. Variance will be found in the language of the opinions, and some of them may seem to lay down more stringent requirements than others. But the established rules which control all the decisions are those stated by Judge Keith in McLin v. Richmond, supra:

"First, 'that the agreement relied on is certain and definite in its terms; second, that the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and, third, that the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie' in compensation. Wright v. Pucket, 22 Grat. (63 Va.) 370; Plunkett v. Bryant, 101 Va. 818, 45 S. E. 742; Reed v. Reed, 108 Va. 790, 62 S. E. 792.''

In Wright v. Pucket, 22 Grat. (Va.) 374, and Crane's Nest C. & C. Co. v. Virginia, etc., Co., 108 Va. 862, 62 S. E. 954, it is said:

"The tendency of all the modern cases, both in England and in this country, is to prefer giving the party compensation in damages, instead of a spe-

cific performance. Wherever damages will answer the purpose of indemnity, this alternative will be preferred, as it will equally satisfy justice, and will be coincident with the provisions and in support of the authority of the statute."

[2] Nearly all the reported cases were decided on the application of these general rules to the evidence adduced. In applying them to the decision of a demurrer or a motion to strike out a pleading, it is to be borne in mind that the demurrer admits, not only the facts specifically alleged, but all facts which are reasonably inferable from those alleged. United States v. Des Moines, etc., Co., 142 U. S. 510, 12 Sup. Ct. 308, 35 L. Ed. 1099. It is not to be expected that the bill should set out the evidence to be adduced; for good pleading requires that the bill state only the ultimate facts to be proved by the details of the evidence. Therefore the court should be cautious not to dismiss a bill for mere lack of fullness of detail in the allegation. The general principle is thus stated in Daniell's Chancery Pleading and Practice:

"A demurrer will lie wherever it is clear that, taking the charges in the bill to be true, the bill would be dismissed at the hearing, but it must be founded on this, that it is an absolute, certain, and clear proposition that it would be so; for if it is a case of circumstances, in which a minute variation between them as stated by the bill, and those established by the evidence, may either incline the court to modify the relief or to grant no relief at all, the court, although it sees that the granting the modified relief, at the hearing will be attended with considerable difficulty, will not support a demurrer. Therefore, where a bill was filed for the specific performance of an agreement entered into by a bankrupt, by the intervention of an agent, and previous to the bankruptcy, a correspondence took place, through the agent, as to granting a lease, and the case turned upon the point whether the facts stated amounted to a perfect agreement, Lord Loughborough thought that, although the circumstances, as stated in the bill, amounted more to a treaty than a complete agreement, the question whether it was an agreement or not must depend very much upon the effect of the evidence, and therefore overruled the demurrer."

This rule was approved in Kansas v. Colorado, 185 U. S. 125, 22 Sup. Ct. 552, 46 L. Ed. 838, and Van Dyke v. Norfolk, etc., R. Co., 112 Va. 835, 72 S. E. 659, though in the latter case it was held to be limited by the consideration in actions for specific performance that the court "must be enabled to say from the facts and circumstances alleged in the bill whether the minds of the parties met upon all the essential particulars of the contract, and, if they did, then can say exactly upon what substantial terms they agreed and trace out the particular line where their minds met."

[3] The allegations of the amended bill to be tested by these rules are:

"That the said deed from Philip Fleming to John W. Fleming, dated February 23, 1878, hereinbefore filed as Complainant's Exhibit No. 19, on its face indicates that the title of John W. Fleming, your orator's predecessor in title, originated of that date. As a matter of fact, your orator charges that long prior to the said date, to wit, some time in the fall of 1870, the said John W. Fleming became vested with a complete equitable title to the said boundary of land under and by virtue of a parol gift in the nature of an

advancement made to him by his father, Philip Fleming, under the following circumstances: The said Philip Fleming had expressed his intention to divide his estate among his children during his lifetime. The said John W. Fleming, who was at this time living with his father, became engaged to marry, and the said Philip Fleming, knowing this fact, and desirous to provide his said son with a home, offered to give to the said John W. Fleming, in the nature of an advancement, the choice of two parcels of land, both of which were portions of a tract containing about 1,000 acres conveyed to him by Warders. The said John W. Fleming selected the tract of land, which was then and there pointed out, indicated and described to him, as follows: All the land bounded by the Elias J. Rose tract, James A. Collier tract, and a line commencing at a beech on Big branch, the beginning corner of the said Rose tract, and running thence in a westwardly direction, and so as to take in the heads of the hollows to a sugar tree in the forks of the Sawpit hollow, then designated and agreed upon; thence a straight line to a large chestnut on Big branch, then designated and agreed upon; thence a straight line to the top of the ridge to a large chestnut, then designated and agreed upon; thence south up to the top of the ridge to a walnut on Short branch, then designated and agreed upon, on the Collier line; thence with the Collier and Rose lines to the beginning. The said John W. Fleming then and there accepted the said parol gift as an *advancement* and in *full of his portion* of his father's estate and *has never* received any other property from the estate of his said father, Philip Fleming, who died intestate about 20 years ago.

"Immediately thereafter the said John W. Fleming entered into possession of the said land, made large expenditures thereon, and began to clear, fence, and cultivate the same, and in December, 1870, he erected a substantial log house thereon. On October 6, 1870, the said John W. Fleming married and immediately moved upon said land and into the said house, and was living in the said house, cultivating and improving the said land, and in the open, notorious, and exclusive possession of every part thereof on December 18, 1874, the date upon which the said Philip Fleming executed an attempted deed, hereinafter filed as an exhibit, to J. D. Price and A. J. Steinman, and has lived upon and cultivated the said land up until the present time. Your orator would here state that the said land so indicated, pointed out, and given to the said John W. Fleming by his father, the said Philip Fleming, was and is the same tract of land which was afterwards conveyed to the said John W. Fleming by deed dated February 23, 1878, hereinbefore filed as Complainant's Exhibit No. 10."

Thus the bill distinctly alleges (1) a contract by parol that John W. Fleming should have the land, supported by the consideration of love and affection, and in pursuance of the intention of Philip Fleming to divide his property among his children, and of the agreement between father and son that this land should be all that the son should receive from his father; (2) the taking and holding exclusive and adverse and notorious possession of the entire land by the son; (3) making large expenditures thereon by the son, building a house, clearing and fencing, and making it his family home in reliance on the contract.

This seems to be sufficient to bring the case within the rule stated in McLin v. Richmond, supra. It is true that the improvements made by the son might represent little value in later conditions or in a developed or progressive community, but under such primitive conditions as the bill implies it may be reasonably inferred that they were the result of arduous and continuous labor bestowed in reliance on the contract that the title to the land should pass, and were such improvements of his home as to make the loss of it irremediable. Whether this is so or not will be determined by the evidence. To say the least, it seems to us that

the case stated in the bill is strong and clear enough to make decision of it under a demurrer unsafe.

[4] 2. Importance was attached in the decree of the District Court to the apparent discrepancy between the description of the land in the amended complaint, which seems to call for a straight line on one side from the "big beech" to the "sugar tree," and the description in the deed of 1878, made by Philip Fleming to John W. Fleming, alleged to embrace the land in dispute, which seems to call for three lines between the points designated. It is true that a parol contract for the conveyance of land and the acts done under it must bear upon a definite tract distinctly identified by boundaries or otherwise; but the exaction of absolute accuracy would be unreasonable, especially as to lands of little value and in an undeveloped country. The discrepancy may be of great significance, or so slight as to be unimportant; that can only be determined when the evidence is before the court.

[5] Under the rule in Virginia proof of notice to defendant of the John W. Fleming interest in the land must have been "such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of mala fides." Vest v. Michie, 31 Grat. (Va.) 149, 31 Am. Rep. 722; Arbuckle v. Gates, 95 Va. 802, 30 S. E. 496; Crane's Nest, etc., Co. v. Virginia, etc., Co., supra. But in Chapman v. Chapman, 91 Va. 397, 21 S. E. 813, 50 Am. St. Rep. 846, it is held that such possession as is here alleged is notice:

"The open and peaceable possession of land under a claim of right is notice to all the world of the right or claim of the person in possession; and where one buys land in the possession of another than his vendor or grantor, he is bound to take notice of such possession and of all that it imports."

Possession of the surface was possession of all the untouched minerals under the surface. Steinman v. Vicars, 99 Va. 597, 39 S. E. 227. And there is nothing in the position that the notice given by possession did not extend to notice of claim to the minerals.

[6] Laches in delaying to bring his action from 1870 until 1912 cannot be attributed to John W. Fleming, since it is alleged he was in the exclusive possession of the land, and there was no assertion of any superior title by the defendant or those under whom he claims. Ruckman v. Cory, 129 U. S. 387, 9 Sup. Ct. 316, 32 L. Ed. 728.

The decree of the District Court must be reversed.

Reversed.