420   COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,    Caperton *vs.* Ballard, adm'r.    1870.

# Wheeling.

## ALLEN T. CAPERTON *vs.* WILLIAM A. BALLARD, ADM'R.

### January Term, 1870.

1. The question of "belligerent rights" and pardon by the President of the United States, determined as in the case of *Caperton* vs. *Martin, infra.*

2. When a plea, replication, or subsequent pleading concludes to the country the adding of the *similiter* being all that is necessary to complete the issue, the omission to do so is not error after verdict which will avail in the appellate court. But it is otherwise when the plea, replication, &c., concludes with a verification, and without anything more, a trial is had and a verdict or judgment rendered without any issue on such plea or replication.

3. C., as provost marshal of the confederate authorities, for Monroe county, ordered a confiscation and sale of the property of B. Prior to the sale, on the application of one of the sons of B., (the latter having abandoned his home and gone into the federal military lines), C. promised to postpone the sale, but did not do so, and subsequently told the son that he had met L. an assistant provost-marshal for the county, who told him, C., that he, L,. was going to leave the county, and could not conduct the sale if it were postponed, whereupon C. had directed him to proceed with it. On the trial of an action for the illegal seizure and sale of the property, after the foregoing had been proved, C. offered to prove the contents of a letter to L. directing him to postpone the sale, and also proof that the letter was mislaid or lost. HELD:

   That the evidence was properly excluded by the court below.

4. The judge of the circuit court stated during the trial, on a motion to offer certain testimony which was objected to, certain facts as being within his own knowledge, and upon objection that such statements were made in the presence of the jury, he instructed the jury that the statements he made on the motion were not to have any effect on them as to any questions of fact in the case; and were instructed to disregard them. He also told

counsel that he made the statements simply to further explain his ruling on the motion to exclude the evidence. HELD:

> That the statements thus made were not sufficient ground for reversing the judgment.

5. The granting of letters of administration by the county court of Monroe county, in 1863, was an act of a tribunal in rebellion against the United States, and hence illegal and void, and it was not necessary to set aside such letters of administration by a competent court in order to give effect to an administration granted by a competent tribunal.

6. An executor *de son tort* is bound by, and will be held responsible for, his acts; and those knowing his true character may likewise be bound by their dealings with him. But such acts cannot bind the rightful executor, and others interested, except in so far as his acts are proper and legal, unless they have assented to, or acquiesced in, his illegal acts.

7. At the sale in this case, J. A. B., one of the distributees of B., the decedent, purchased a portion of the property, and subsequently, in 1863, the net proceeds of the sale was paid him as administrator appointed by the county court of Monroe county, in 1863, by order of the confederate authorities. And it is held that, in legal contemplation, the purchase of J. A. B. must be regarded, in the absence of evidence, as a purchase for the father, he being alive at the period of the sale, or that the property was in fact returned to or came into his possession, as a sale to any other person, and consequently, it was a legal conversion of the property by the defendant to his own use.

This was an action of trespass on the case for illegal seizure and sale of the property of the plaintiff's intestate, William Ballard, deceased, by the defendant, Allen T. Caperton, brought in Monroe county. The summons was returnable to June rules, 1866. The declaration alleged that the defendant, on the 20th day of December, 1862, unlawfully seized the cattle, horses, agricultural implements, grain, &c., of the plaintiff's decedent, and converted the same to his own use, and caused, ordered and procured others to dispose of the same to their own use, &c.

The defendant filed six special pleas. The first plea alleged that the plaintiff was not the administrator of the decedent. The second plea, after craving oyer, alleged that administration had been granted to one John C. Ballard, by the county court of Monroe county, in February, 1863. The

third plea was the general issue. The fourth plea was substantially the plea of "belligerent rights," and alleged that the defendant was acting as provost-marshal for the confederate authorities, in Monroe county, and that the property was confiscated in accordance with the laws and practices of such authorities. The fifth plea was a pardon for all offenses committed by the defendant during the rebellion, granted by the President of the United States. The sixth plea purported to be accord and satisfaction, and alleged that the net proceeds of the sale of the property had been paid to the administrator of the decedent, on the 20th day of July, 1863, and had by him been accepted in full satisfaction of the grievances, &c.

The plaintiff replied to the first plea, that he was the lawful administrator of the decedent; to the second, that the letters of administration to John C. Ballard were granted by a court in rebellion against the United States, and were null and void; to the third, generally. He demurred to the fourth and fifth pleas. He replied specially to the sixth plea that, at the time of the payment, July 20th, 1863, the same was not made to the lawful administrator of the decedent, nor to any one else having authority to receive the same, and concluded to the country, but no *similiter* appears to have been added. The circuit court sustained the demurrer to the fourth and fifth pleas. A trial was had in July, 1867, and a verdict rendered for the plaintiff for 1,258 dollars.

The plaintiff, William A. Ballard, obtained letters of administration on the estate of the decedent, in the circuit court of Monroe county, in April, 1866, as appeared from the evidence.

The first bill of exceptions taken by the defendant during the trial, disclosed that, after the plaintiff had introduced testimony tending to show the seizure and sale of the property, by one Wilson Lively, assistant provost-marshal for the county of Monroe, and that the goods were so seized and sold by the order of the defendant, then provost-mar-

shal for Monroe county, and also tending to show that John C. Ballard, a son of the plaintiff's intestate, had applied, prior to the sale, to the defendant, to postpone the sale, and he had promised to do so, but had not done so, and that after the sale he had met the defendant who admitted that he had promised to postpone the sale, but afterwards meeting with Lively the latter had informed him that he was about to leave the county and could not conduct the sale if it was postponed, and he had then directed him to proceed with the sale. Whereupon the defendant, for the purpose of showing that he had directed a postponement of the sale, offered to prove the contents of a letter addressed to Lively in his lifetime, by the defendant, in his character of provost-marshal, in which he claims to be able to show that he had directed a postponement of the sale, together with proof of the loss of the letter. The court refused the permission to prove the contents of this letter, and the defendant excepted. The second bill of exceptions was taken to a statement made by the Judge presiding when the case was tried, in his remarks on overruling the motion of the defendant to prove the contents of the letter mentioned in the first bill of exceptions. The Judge stated that, in 1862 and 1863, he resided only three miles from the provost-marshal's office of Monroe county, and to some extent was both historically and practically familiar with the duties and proceedings of that office, and that in deciding the application under consideration, the court could not close its eyes to what it thus knew; that the office was well organized and conducted with strictest discipline, and that the assistant provost-marshals, as well as the provost or police guard of that office, were all subordinate to the authority of the provost-marshal. To which statement, in the presence of the jury, the defendant objected; whereupon the court stated to the jury that no statements made by the court on the motion could have, or were intended by the court to have, any effect upon the jury, as to any questions of fact in the case, and that the jury would understand the court as instructing them to dis-

regard all such statements, and at the same time distinctly stating to counsel that the court simply adverted to the matter in further explanation of the grounds of its opinion overruling the motion. To the making of the statement in the presence of the jury, the defendant excepted.

The third bill of exceptions was taken because the court refused to permit a pardon granted to the defendant by the President of the United States, for offenses committed by him during the rebellion, to be offered in evidence.

The fourth bill of exceptions contained the evidence introduced by the parties, and the instructions to the jury asked by the defendant. It appeared from the evidence, in addition to what has been heretofore stated, that the property of the decedent was seized by Lively by order of the defendant, who claimed to have been acting under orders from the confederate headquarters, requiring provost-marshals to confiscate the property of all citizens who abandoned their homes and gone within the federal military lines; that the decedent went within the federal lines on account of his loyalty to the United States government, and his property was publicly sold for confederate money, and that John C. Ballard, one other of the distributees of the decedent, (who was then living, but soon after died), purchased a portion of the property, and paid the price thereof in confederate money to Lively. The defendant offered evidence tending to show the qualification of John C. Ballard as administrator before the county court of Monroe, in 1863; also, that John C. Ballard, as such administrator, had been paid the net proceeds of the sale in July, 1863, under an order of the war department of the confederate authorities. That the county of Monroe was under martial law, proclaimed by the confederate authorities at that time.

The first instruction asked by the defendant was to the effect, if the jury believed that the estate of the decedent had been committed to John C. Ballard by the county court of Monroe county, composed of three justices commissioned in 1860, that such appointment as adminstrator was suffi-

cient to authorize him to act as such until the same was set aside by a court of competent jurisdiction. The second instruction asked that, if the plaintiff was entitled to recover at all, the amount paid to John C. Ballard, by Lively, ought to be deducted therefrom by the jury. The third asked that, if the jury believed that the distributees of the decedent, at the sale of the property, purchased any part of it' and paid therefor in confederate money, and afterwards had the same confederate money returned to them by Lively, that the plaintiff could not recover.

The remaining instructions it is not necessary to mention, as they were not considered by this court.

The court refused the first instruction, and instructed the jury that, if they believed the appointment of John C. Ballard, in 1863, was made by a court composed of justices engaged in rebellion against the United States, their judicial acts were null and void, and it was not necessary to revoke an invalid order in order to give effect to the plaintiff's appointment, which was made by a competent tribunal. The second and third instructions were also refused.

The defendant excepted to the ruling of the court in the matter of the instructions.

The case came here on a writ of supersedeas,

Hon. N. Harrison, judge of the circuit court of Monroe, presided on the trial of the case.

*C. Boggess* for the plaintiff in error.
*Stanton & Allison* for the defendant in error,

BERKSHIRE, J. The first, second, fourth, and seventh errors assigned in this case were considered, and the objections suggested by them overruled, in the case of *Caperton* vs. *Martin, infra*, and therefore it will be unnecessary to consider them. The third error assigned is, because no issue was made up on the defendant's additional plea, No. 6. It purports to be a plea of accord and satisfaction with the

administrator of the plaintiff, by the payment to him of a certain sum which, it is alleged, was the proceeds of the sale of the property described in the declaration which was received and accepted by the said administrator in full satisfaction of the trespass complained of, and prays judgment, &c.

The plaintiff, it appears, filed a special replication to this plea, traversing the fact that the sum of money mentioned in the plea, or any part thereof, was ever paid to the *lawful* administrator of the plaintiff's intestate, or to any other person having authority to receive the same, and concludes to the country. It does not appear, however, that any issue was made up on the replication, by adding the *similiter* or rejoinder. When a plea, replication, or subsequent pleading concludes to the country, the adding of the *similiter* being all that is necessary to complete the issue, the omission to do so is not error after verdict which will avail in the appellate court; but it is otherwise when the plea, replication, &c., concludes with a verification, and without anything more, a trial is had and a verdict or judgment rendered without any issue on such plea or replication. *B. and O. R. R.* vs. *Faulkner, infra;* Code 1860, ch. 181, sec. 3.

The fifth assignment of error is the ruling of the court in excluding evidence of the contents of a certain letter written by the defendant to Wilson Lively, mentioned in the defendant's first bill of exceptions. From all that is disclosed in the record, I do not think any error was committed in rejecting the evidence referred to, nor do I think the letter in question, if produced, would have been pertinent evidence, or have any effect whatever, on the question before the jury. It appears that the property in controversy was sold under the defendant's authority, or by his permission and acquiescence, and the measure of damages being the value of the property, it is not perceived how a letter, written by him to his deputy, by whom the sale was conducted, directing a *postponement* of the sale, which sale the defendant nevertheless allowed to be made, whereby

his liability was fixed, could help him or have any influence on the verdict of the jury.

The next objection which is assigned as error, is embodied in the defendant's second bill of exceptions, and relates to what was said by the court in the presence of the jury in the delivery of its opinion in refusing the evidence offered of the contents of the letter from the defendant to Lively, before referred to, in reference to its knowledge of the official relations existing between the defendant and Lively, and the latter's subordinate position under the former at the time of the trespass complained of.

It appears, however, that the court, at the same time, instructed the jury and explained to the counsel, that what had been said on this point was not evidence in the cause, nor intended to be, or to have any effect whatever on the deliberations of the jury, but that what was said was only intended to illustrate the opinion of the court then being delivered, and that the jury must disregard the same. If the impropriety of the statements of the court referred to were conceded, still I fail to discover any sufficient ground for reversing the judgment, from anything disclosed in the bill of exceptions we are now considering.

The remaining error complained of, which we are required to consider, relates to the action and ruling of the court on the first, second and third instructions asked by the defendant and set forth in his fourth bill of exceptions. The first instruction was refused and another given in lieu thereof. The other two were refused and no others given in their stead.

As to the first: I think it was clearly inadmissable, and that the one given in lieu of it properly propounded the law, and consequently there was no error in refusing the one and giving the other. The second, I think, was also properly refused. It involves the question of the validity of a settlement by accord and satisfaction of a debt or demand due the estate of a decedent by an executor *de son tort*, as against the rightful executor or those legally authorized

to receive payment or to make such settlement. The proposition, I think, is untenable. It is well settled that an executor *de son tort*, so far as he is concerned *himself*, will be bound by, and held responsible for, all his acts as such, and those who deal with him as such, knowing his true character, may likewise be bound by their dealings with him. But it cannot, it seems to me, be so as to the rightful executor and others interested, except in so far as his acts are proper and legal, unless they have assented to, or acquiesced in, the illegal acts and proceedings of such wrongful executor; otherwise an irresponsible party would have it in his power to seize on an estate and, by fraud and collusion, convert it to *his own use*; a position, in my judgment, wholly indefensible. If such executor would have the right to collect the debts of a decedent for the legitimate purpose of paying the funeral expenses, for instance, or the payment of the debts generally, he would, in my judgment, have no right to *compound* or *release* the same, or anything else that would prejudice the rightful executor, or others interested in the estate; and as the executor *de son tort*, in this case, could not have sued the defendant and recovered in this case in the name of the decedent, William Ballard, I think it must follow that he had no authority to settle, by accord and satisfaction, or to release the cause of action to the prejudice of the rightful executor or administrator. 2 Tuck., 414.

The third instruction, in my view, involves a more difficult proposition than the two preceding. It is in these words: "If the jury believe from the evidence that the legatees or distributees of the estate of William Ballard, deceased, the former owner of the property in controversy, at the sale of the property by Wilson Lively, purchased any part thereof and paid for the same in confederate money, and afterwards had the said confederate money returned by said Lively, then the plaintiff cannot recover in this action for such property." If it was shown by the evidence in the cause, or could be justly implied from anything in the record, that the property referred to in the instruction was,

in point of *fact*, purchased in by the legatees or distributees of the owner, William Ballard, and was held by them for the benefit of the estate, and there being, at the time of the sale, no legal representative of said estate, I would think there would be no such a case of conversion of the property thus purchased, as would make the defendant liable for the same. But it appears from the record that William Ballard, the owner, was then living, and, in legal contemplation, the sale to his children must be regarded, in the absence of evidence, that they purchased *for* the father, or that the property was in fact returned to, or came into his possession, as a sale to any other person, and consequently a legal conversion of the property by the defendant to his own use.

Upon the whole, I am of opinion to affirm the judgment with costs and damages.

The other Judges concurred.

JUDGMENT AFFIRMED.