Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BABER AND OTHERS V. BABER AND OTHERS.

November 15, 1917.

1. BEST AND SECONDARY EVIDENCE—*Lost Instruments.*—A copy of an original contract, which has been lost, made by counsel and filed with the bill of one of the parties to the contract, which bill alleged that the original had been filed with the answer of the party in another suit, although not authenticated by the certificate of the clerk of the court among the records of which the original was filed at the time such copy was made, is admissible in evidence. The fact that at the time such copy was filed it was not the best evidence and valid objection might have been made in that suit to its introduction in evidence, is immaterial, after the original has been lost, and section 3334, Code of 1904, has no application.

2. LOST INSTRUMENTS—*Parol Evidence—Contents.*—Where the proof of the former existence of an instrument is strong and conclusive, even parol evidence of its contents is admissible, and if strong and convincing, will set up and establish the lost instrument.

3. ADVERSE POSSESSION—*What Constitutes Color of Title.*—Color of title must be by deed or will, or other *writing*, which purports or contracts to pass title, legal or equitable, and which contains sufficient terms to designate the land in question with such certainty that the boundaries thereof can be ascertained therefrom by the application thereto of the general rules governing the location of land conveyed by a deed. The title to which the writing gives the color, or semblance of title, may be an equitable as well as a legal title. It is inherent in color of title that the title claimed thereunder is invalid—is in fact no title—and the writing may indeed be absolutely void: but if the other requisites of the statute of limitation are complied with by the disseisor, it will constitute color of title.

4. ADVERSE POSSESSION—*Color of Title—Case at Bar.*—An instrument executed by a father and son, called a bill of bargain and sale, set forth that the father sold to the son a certain parcel of land, describing it, in consideration of one-half of

the merchantable fruit on the premises, during the lifetime of the father, and that the son should furnish his mother with board and lodging during her life.

*Held:* That this constituted a contract in writing, which, if performed on the part of the vendee, would have passed the equitable title to the land to him; and if his possession of the land was accompanied by the *bona fide* claim that he had performed his part of such contract and that he was entitled to the land thereunder, the contract gave him color of title. It is not necessary to consider the question whether the son in fact performed the contract on his part so as to have acquired a valid title to the land. The inquiry stops with the ascertainment of the fact that he accompanied his possession with the *bona fide* claim to have so done, and continued such possession unbroken for the statutory period.

5.  ADVERSE POSSESSION—*Joint Tenants and Tenants in Common—Parceners.*—The possession of one joint tenant, tenant in common or parcener, is *prima facie* the possession of his fellow, and it follows that the possession of one is never adverse to the title of the other, unless there be proved an actual ouster or disseisin or other act amounting to a total denial of the cotenant's right as cotenant.

6.  ADVERSE POSSESSION—*Possession Held Under True Owner—Disclaimer.*—Where possession is originally taken or held under the true owner, a clear, positive and continued disclaimer and disavowal of title and assertion of an adverse right, brought home to the knowledge of the party, are indispensable before any foundation can be laid for the operation of the statute of limitations. The statute does not begin to operate until the possession, before in privity with the title of the true owner, becomes tortious and wrongful by the disloyal acts of the occupying tenant, which must be open, continuous and notorious, so as to preclude any doubt of the character of the holding or the fact of knowledge on the part of the owner.

7.  ADVERSE POSSESSION—*Possession Held Under True Owner—Disclaimer—Constructive Notice.*—The notice to or knowledge of the true owner or of the coparceners, or others originally having privity of title with the disseisor, of his disclaimer and assertion of an adverse right, required to be proved before the running of the statute of limitations will begin, need not be actual; it may be constructive.

8.  ADVERSE POSSESSION—*Possession Held Under True Owner—Disclaimer—Proof of Disclaimer.*—A disclaimer or assertion of an adverse right, where possession is originally taken or held under the true owner, or by one joint tenant, tenant in com-

mon or parcener, may be presumed from a great lapse of time, with other circumstances which might warrant such presumption, and proof of the fact is not required to be so convincing as to preclude all doubt. It may be proved as any other fact involved in a civil case may be proved by circumstantial evidence, the probative value and sufficiency of the circumstantial evidence to sustain the burden of proof required (i. *e.*, by a preponderance of the evidence), being entirely with the jury.

9. ADVERSE POSSESSION—*Possession Held Under True Owner—Disclaimer—Proof of Disclaimer—Non-Residents.*—Non-residents labor under no disability with respect to the right to institute or prosecute suit at any time to assert or preserve any right of action they may have. No such right is reserved to them by statute. On the contrary when proceeded against by order of publication, etc., their rights in this respect are restricted and limited by sections 2986 and 3233 of Code of 1904. Therefore, the non-residence of one coparcener has no bearing upon the question of fact as to whether the notoriety of the disclaimer and adverse claim of right of another coparcener in possession of the land was so long continued as to affect him with constructive notice thereof, save in so far as the distance he lived from the land and the adverse occupant and claimant and his lack of communication with those who knew such facts, may affect the question.

10. LACHES—*Prosecuting Pending Cause.*—The same rule with respect to laches being a bar to the institution of a suit in equity applies to the right to further prosecute a pending cause. While mere lapse of time will not make this rule applicable, where the delay results in the death of parties and the loss of evidence, rendering it difficult to do justice between the parties, a court of equity will hold it too late to ascertain the merits of the controversy and will not interfere whatever may have been the original justice of the claim. Accordingly a court of equity will, in such case, refuse to grant relief in a cause which has been long pending, although originally instituted in due time, equally as it will in such case, refuse to grant relief in a newly instituted suit.

11. LACHES—*Failure to Prosecute Pending Suit—Loss of Evidence—Case at Bar.*—Failure of other heirs to prosecute a suit for partition of a tract of land for more than thirty years, against a coheir in possession under a contract of sale, which contract he claimed to have performed on his part, bars them from relief in another suit for the same purpose, where testimony of importance has been lost by the delay.

Appeal from a decree of the Circuit Court of Albemarle county. Decree for complainants. Defendants appeal.

*Reversed.*

### Statement of the Case and Facts.

This suit in equity was instituted in the Circuit Court of Albemarle county by Joseph E. Baber, one of the appellees, in November, 1909. The object of the suit was to have sale for partition among the parties entitled thereto of a tract of about 141 1-2 acres of land (sometimes referred to in the record as about 140 acres), formerly belonging to William Baber, Sr., deceased, the father of said appellee. The appellants (who are heirs at law of John H. Baber, deceased, a brother of said Joseph E. Baber and also a son of said William Baber, deceased), and other descendants of the last named decedent, were made defendants to the suit. The appellants, by their answer in such suit, set up the defense, in bar of the suit, that their father, the said John H. Baber, deceased, had, in his life time, acquired title to said land in fee by disseisin or ouster of his co-parcenors and by his adverse possession of such land for the statutory period; and that such title had passed to the appellants by descent from the said John H. Baber.

A petition and also an answer was filed in said suit in 1915 by one Mary C. Wilson, sole devisee under the will of James K. Baber, deceased (another son of the said William Baber, Sr., deceased), of all the "estate and property, real and personal" of the said James K. Baber, deceased, claiming the interest in said land which would have belonged to the latter if not barred by said alleged adverse possession of said John H. Baber, deceased.

A few days later in 1915 William L. Greene and J. E. Greene filed their answer in such suit, prayed to be heard as a cross-bill, and D. N. Greene filed his answer therein

(said William L., J. E. and D. N. Greene being devisees under the will of Georgianna Greene, the latter being Georgianna Clatterbaugh at the time of her death in 1911, she having married a second time), claiming the interest in said land which would have belonged to the said Georgianna Greene, their great aunt, a daughter of said William Baber, Sr., if not barred by said alleged adverse possession of said John H. Baber, deceased.

### THE FACTS.

The following writing is relied on by appellants as having given their ancestor, the said John H. Baber, color of title to said land, namely:

"Exhibit "A." "This bill of bargain and sale made and entered into this the 6th day of December, 1874, between M. Baber of Rockbridge Co., Va., and John H. Baber of Albemarle, Va. Witness the said William Baber hath this day sold to the said John H. Baber a certain tract or parcel of land lying in Albemarle county, Va., adjoining the lands of J. M. Henderson, Wm. R. Babers heirs and others it being the land on which the said J. H. Baber now resides and containing 141 1-2 acres for one-half of the merchantable fruit on said place the said William Babers lifetime and furnish Elizabeth Baber the mother of said John H. Baber and the wife of the said William Baber board and lodging *during* lifetime of said Elizabeth Baber.

"In witness whereof we have signed our names the above date written.

WM. (his mark) BABER,
JOHN H. BABER."

"Witness,
S. J. BABER."

John H. Baber was living on and in possession of said land under and in privity of title with his father William Baber, Sr., at the date of such writing, hereinbefore referred to as "Exhibit A." Elizabeth Baber, his mother, lived only a short time thereafter, and died in 1875. The said William Baber, Sr., lived only a few months longer and died in 1875 also, before the fruit crop on said land for that year matured. The said John H. Baber, from the date of Exhibit A., lived upon said land until his death in 1908, a period of thirty-four years, approximately, continuously without any break in such possession, and some of appellants, his descendants, have continued to live upon said land ever since, without break in their possession of it.

There is some conflict in the testimony of the witnesses as to whether the said John H. Baber accompanied his said possession of said land by claim of title thereto in fee under Exhibit A., and as to whether he in fact discharged the consideration named in such writing so as in fact to entitle him to such land thereunder; but the preponderance of the evidence clearly establishes the fact that in 1878 at least, and from that time until his death, a period of thirty years approximately, the said John H. Baber accompanied his said possession of said land by claim of title thereto in fee under Exhibit A.; such claim of title being that he had discharged the consideration named in such writing by furnishing board and lodging to his said mother during her life time; that no merchantable fruit on said land matured between the making of said writing and the death of his father; that he had accordingly, since the date of such writing, Exhibit A., held possession of said land as the owner in fee thereof under such writing and continued such possession accompanied by such claim of title until his death.

Such claim of title and possession up to May 10, 1878, by said John H. Baber was made by his answer filed on such

date, by leave of court per order of that date, in a suit of the short style of *Herron* v. *Baber* instituted in that year (in March, 1878) in the Circuit Court of Albemarle county. That suit (among other things), had for its object precisely the same thing as the suit before us, first above mentioned. That was a suit for sale of said land for partition. The said Joseph E. Baber and said Georgianna Green, were parties defendant thereto, and so were other descendants of said William Baber, Sr., deceased, as well as the said John H. Baber. The original of said Exhibit A., was filed with the said answer of John H. Baber in that suit.

The said James K. Baber was not a party to the suit of *Herron* v. *Baber, supra,* but during the same year, 1878, another suit for sale of said land for partition was instituted in Rockbridge county (including in its object the sale of other land in the latter county for partition). The short style of the latter suit was *Greene* v. *Baber.* To this suit the said James K. Baber was made a party defendant as a non-resident (he being then a resident of the State of West Virginia). The said Georgianna Greene (along with her husband Henry A. Greene) was a party plaintiff to such suit. The said Joseph E. Baber was not made a party to this suit. Other descendants of said William Baber, deceased, as well as the said John H. Baber, were made parties defendant thereto. Such cause of *Greene* v. *Baber* was, by order of the Circuit Court of Rockbridge county of May 14, 1878, removed to the Circuit Court of Albemarle county.

By decree of the Circuit Court of Albemarle county entered May 17, 1878, the said causes of *Herron* v. *Baber* and *Greene* v. *Baber* were ordered to be heard together, the court in such decree saying (among other things) that the "said first named cause having been regularly matured and set for hearing according to law, came on this day to be heard upon the bill taken for confessed as to * * * Georgi-

anna Greene. * * * Joseph E. Baber, the answer of John
H. Baber * * * with general replication thereto, on the ex-
hibits and examination of witnesses. * * * And the second
of said causes which has been regularly matured and heard
as to all parties thereto in the Circuit Court of Rockbridge
county and all the papers of which by an order of said cir-
cuit court have been transferred and certified to this court
to be read (and) heard * * * with the first above named
cause, the object of both suits being the same, the settle-
ment of the estate of Wm. Baber, Sr., dec'd, is accordingly
this day docketed in this court and is ordered to be * * *
heard with said first named cause, and *it appearing that all
the parties to said two suits are now before the court.*
* * *" etc. (Italics supplied). The only further provisions
of such decree which concerned the above mentioned
141 1-2 acre tract of land was the following: "And it is
further adjudged, ordered and decreed that it be referred
to one of the commissioners of this court to take, state and
report the following accounts, to-wit: * * * 3rd. An ac-
count showing what real estate in Albemarle county, if any,
belongs to the estate of said W. Baber, Sr., and especially
all the facts touching the title and ownership of the 141 1-2
acre tract of land near Batesville and showing to whom
said tract belongs. * * *"

At that time all of said parties to said suits were living
either in Albemarle or Rockbridge counties (except James
K. Baber, who was then, and continued to be until his
death in 1910, a resident of West Virginia), and they (ex-
cept James K. Baber) and most of their descendants have
continued to reside in those or adjoining counties up to the
present time, except Silas J. Baber, who removed from
Rockbridge county to Texas in 1882.

In 1881 an order was entered in said causes, heard to-
gether as aforesaid, directing a rule to issue against the
special commissioner of the court therein, requiring him to

report whether he had made sale of a certain tract of land in Rockbridge county and concerning the resale of that land if it had been sold.

On February 9, 1892, a decree was entered in such causes in which it was stated that the court, "without passing upon any other question," confirmed the sale of said tract of Rockbridge county land, etc., making no reference to the issue in these causes made by the adverse claim of title of John H. Baber aforesaid.

On February 17, 1892, the papers in such causes were withdrawn from the clerk's office of the last named court by Judge George W. Morris, an attorney at law practicing in that court and his receipt was left therefor.

Nothing further was done in these causes of *Herron* v. *Baber* and *Greene* v. *Baber*, or either of them.

In October, 1895, an order was entered by the Circuit Court of Albemarle county striking a great number of chancery causes from its docket, by their short styles, under the statute on the subject, the order stating that it appeared to the court "that nothing has been done (but) to continue them for more than five years;" and among such causes appearing from such order to have been so stricken from the docket was that of *Greene* v. *Baber*. Following this order, the cause of *Herron* v. *Baber*, as "ended cause No. 1773," as well as the cause of *Greene* v. *Baber,* as "ended cause No. 1772," was in fact "retired from the docket" under such order of October, 1895.

It will be observed that the statement in the last named order to the effect that nothing had been done in the cause of *Greene* v. *Baber* for more than five years except to continue it, was an error.

The papers in said suit of *Herron* v. *Baber* were lost and no trace of them has been found since the receipt of them by Judge Morris in February, 1892, as aforesaid.

No proceeding was ever taken under section 3376 of Code of Virginia by Joseph E. Baber, Georgianna Greene or James K. Baber, or the said devisees of the latter (which are all the parties who, by said bill, petition and cross-bill in the cause before us, sought the relief aforesaid in the court below), or by any other parties in interest, to restore said lost papers of said chancery suit of *Herron* v. *Baber*, except that in said cross-bill filed in 1915, as aforesaid, the said suit of the appellee, Joseph E. Baber is asked to be heard as a suit under such section to restore such lost papers, and there is a prayer that said causes of *Herron* v. *Baber* and *Greene* v. *Baber* may be restored to the docket and for general relief, etc.

Pending the aforesaid delay of the said appellee in instituting said recent proceedings to obtain sale of said land for partition and their delay and that of those under whom the said petitioner and cross-bill plaintiffs claim, in seeking relief in said causes of *Herron* v. *Baber* and *Greene* v. *Baber* and in bringing to trial the same issue of adverse possession aforesaid involved therein as is now involved in said recent proceedings in the cause before us, the said John H. Baber died, and so did many of his co-parceners in said land, whose testimony upon said issue would have been of vital importance.

Further:

There was another suit instituted in September, 1878, in the Circuit Court of Rockbridge county, of the short style of *Spiece* v. *Baber*. That was a suit brought by John B. Spiece, claiming to be a creditor of R. S. Baber, deceased, a son of William Baber, Sr., deceased, setting up an alleged sale of said land to R. S. Baber by William Baber, Sr., and asking that it be sold to satisfy such debt of R. S. Baber; and the said John H. Baber, *ante motem litam*, in a suit brought by him against said Spiece, set up the same claim

of adverse possession aforesaid, and, on June 26, 1879, obtained an injunction restraining and enjoining the sale of said land at the suit of said Spiece.

In his bill in this injunction suit the said John H. Baber alleged that in said suit of *Herron* v. *Baber* he had set up and filed the original contract aforesaid (Exhibit A) "and subsequently took depositions and proved beyond question the execution of said contract and the performance on his part of the consideration agreed to be paid by him for said land;" that such suit of *Herron* v. *Baber* was then pending, and that "the plaintiffs in said suit have virtually abandoned their claims and have in effect admitted the right of your complainant (John H. Baber) to said tract of land."

By the delay of said appellees aforesaid the depositions referred to have been lost and the appellants have been deprived of that evidence to sustain the said issue of adverse possession on their part.

With the bill of said John H. Baber in said injunction suit is filed what purports to be a copy of said writing (Exhibit A), in the handwriting of Col. R. T. W. Duke, counsel for John H. Baber therein, made by the latter from the original of such contract filed with the answer of John H. Baber in said suit of *Herron* v. *Baber,* as aforesaid. Exhibit A in the suit before us is a copy of such copy made by Col. Duke, the original having been lost with the papers of such suit of *Herron* v. *Baber.*

The decree complained of, so far as material, is as follows: "* * * the court having maturely considered the pleadings and the evidence adduced in this cause, and being of the opinion that the cause of *Greene* v. *Baber* was improvidently, illegally and by mistake stricken from the docket of the Circuit Court of Albemarle county, the court doth adjudge, order and decree that the said cause of *Greene* v. *Baber* be and the same hereby is restored to the docket of the said Circuit Court of Albemarle county; and

it appearing to the court from the papers in this cause that the papers in the suit of *Herron* v. *Baber* have been lost and it further appearing to the court that the present cause of *Joseph E. Baber* v. *James K. Baber et als.*, has for its object the same end and result as that sought by the said suit of *Herron* v. *Baber*, the court doth adjudge, order and decree that said suit of *Herron* v. *Baber* be and the same is to be heard together with the present suit of *Joseph E. Baber* v. *James K. Baber et als.*, and with said cause of *Greene* v. *Baber* heretofore stricken illegally from the docket.

"And the court being of opinion from all the pleadings and the evidence adduced in this cause that the plaintiff, Joseph E. Baber, is entitled to maintain the prayer of his bill filed at 2nd December rules, 1909, and that the heirs of John H. Baber, deceased, are only entitled to a one-sixth interest in the funds in this cause, their said ancestor, John H. Baber, never having ousted his cotenants from the one hundred and forty (140) acre tract belonging to William Baber deceased, and never having had adverse possession of the same, and the other heirs of William Baber not having been guilty of any laches in respect to the said 140 acres of land, or the possession of the said John H. Baber therein, but being of opinion that the heirs of William Baber held the said 140 acres as co-tenants, each of his six heirs being entitled to one-sixth interest therein, doth therefore adjudge, order and decree that the said heirs and distributees of John H. Baber, deceased, shall not share in the funds in this cause to the exclusion of the other heirs and distributees of William H. Baber, deceased, but shall only receive one-sixth interest therein."

*R. T. W. Duke, Jr.*, for the appellants.

*Chapman & Averill, N. W. Moores, Watson & Bolling* and *Alderson & Breckinridge*, for the appellees.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

Many interesting questions raised by the pleadings, assignments of error and argument of counsel on both sides of this cause need not be touched upon in this opinion, that being unnecessary for the decision of the cause, in our view of it. Only the following questions, deemed to be material to the decision of this cause, will be considered and passed upon in their order as stated below:

1. Is Exhibit A, which is in effect a copy of the original writing made by counsel, not authenticated by the certificate of the clerk of the court among the records of which the original was filed at the time such copy was made, admissible in evidence in the cause before us?

The original of the writing being lost, as aforesaid, at the time such copy was sought to be introduced in evidence in this cause, it was at that time impossible to obtain a copy thereof certified by the clerk, and it was *then* the best evidence of such writing in existence. It at least tended to prove the contents of such writing, and under the best evidence rule it was admissible in evidence. The fact that at the time such copy was filed in the said injunction suit it was not the best evidence and valid objection thereto might have been made in that suit to its introduction in evidence therein, is immaterial upon the question as it arises in the cause before us. Such objection was not made in such injunction suit. If it had been it would have doubtless resulted in a copy of such writing duly authenticated in accordance with section 3334 of Code of Virginia being filed in such suit. Such a result was impossible of attainment after the loss of the original writing and such statute could have no application thereafter.

The authorities cited for appellees to sustain their contention that Exhibit A is not admissible in evidence are

not found to be in point. In *Payne* v. *Commonwealth*, 31 Gratt. (72 Va.) 855, the letter or paper was held inadmissible in evidence as tending to prove an admission by the accused, because the latter did not receive it or know of its existence.. In *Barley* v. *Byrd*, 95 Va. 316, 28 S. E. 329, the writing, held inadmissible in evidence to prove the fact therein stated, was a memorandum made by an attorney, to the effect that a certain deed had been executed. In the opinion of this court by Keith, P., it is said: "The question is not as to the authenticity of this paper. That may be conceded. What is its effect as proof in this case against the defendant?" And it was held inadmissible in evidence to prove the fact therein stated, under well settled rules of evidence having no application to the question under consideration in the cause before us. In *Carter* v. *Wood*, 103 Va. 68, 48 S. E. 553, the objection was not to the unauthenticated copy of a deed, but to the entire lack of proof that the deed copied was the original deed in question. Inferentially this case holds that an unauthenticated copy is admissible in evidence when the proof identifies the original from which the copy was made. To the same effect is the case of *Thomas* v. *Ribble*, 2 Va. Dec. 324, 24 S. E. 241. In *Johnson* v. *McCoy*, 112 Va. 580, 72 S. E. 123, it was held merely "that where a plaintiff claims title under a lost or destroyed paper the proof of its former existence, contents and loss or destruction, must be strong and conclusive before the court will admit a title to be established by parol evidence." The proof of the former existence of the original answer of John H. Baber and its loss, as set forth in the statement of facts above, is strong and conclusive. Therefore, even parol evidence would be admissible of its contents, under well settled rules on the subject, and, if such proof of its contents were strong and convincing, it would set up and establish the lost instrument. To the same effect is the case of *McLin* v. *Richmond*,

114 Va. 244, 250, 76 S. E. 301. In *Snyder* v. *Charleston, etc., Bridge Co.,* 65 W. Va. 1, 63 S. E. 616, 131 Am. St. Rep. 947, it was held, merely, that, "before the contents of a lost paper can be properly given in evidence it is not only necessary to prove that it is lost and that diligent search has been made to find it, but its due execution as well." In the case of *Caperton* v. *Ballard,* 4 W. Va. 420, the contents of the lost letter in question were not material to the issue and for that reason such contents were not allowed to be proved.

Hence, these authorities are found not to be in conflict with the conclusion above reached on the question under consideration.

2. Was Exhibit A sufficient to give color of title?

This question must be answered in the affirmative. It is well to remember that the inquiry as to what is color of title is important only where, as in Virginia, color of title is held to give to the disseisor, who has *actual possession* of only a part of the land he claims, constructive possession of the whole of the land to the extent of the boundaries thereof covered by his color of title, in the absence of any interlock of conflicting bounds of the constructive possession of the true owner, due to some actual possession of the latter held under his title. *Taylor* v. *Burnsides,* 1 Gratt. (42 Va.) 196; *Hunicutt* v. *Peyton,* 102 U. S. 333, 26 L. Ed. 113; *Koiner* v. *Rankin's Heirs,* 11 Gratt. (52 Va.) 420.

It is now well settled in this State that color of title must be by deed or will, or other *writing,* which purports or contracts to pass title, legal or equitable, and which contains sufficient terms to designate the land in question with such certainty that the boundaries thereof can be ascertained therefrom by the application thereto of the general rules governing the location of land conveyed by a deed. As stated, the title to which the writing gives the color, or semblance of title, may be an equitable as well as a legal

title. It is inherent in color of title that the title claimed thereunder is invalid—is in fact no title—and the writing may indeed be absolutely void; but if the other requisites of the statute of limitation are complied with by the disseisor, it will constitute color of title. *Sharp* v. *Shenandoah Furnace Co.*, 100 Va. 27, 40 S. E. 103; *Sulphur Mines Co.* v. *Thompson*, 93 Va. 293, 25 S. E. 232; Sedg. & Wait on Trial of Land Titles, secs. 767, 769.

The authorities, cited for appellees, of *Allen* v. *Paul*, 24 Gratt. (65 Va.) 334; Newell on Eject. 772, sec. 87; *Knight* v. *Grim*, 110 Va. 400, 66 S. E. 42, 19 Ann. Cas. 400; *Ritz* v. *Ritz*, 64 W. Va. 107, 60 S. E. 1095, are not in conflict with what is said above.

Exhibit A was a contract in writing, which, if performed on the part of the vendee, John H. Baber, would have passed the equitable title to said land to him. If his possession of the land was accompanied by the *bona fide* claim that he had performed his part of such contract and that he was entitled to the land thereunder, the contract gave him color of title.

It clearly appears from the facts in the cause before us that said John H. Baber was in actual possession of a part of the land involved therein continuously from 1874 until his death in 1908, and that certainly from 1878, when he asserted his claim of ownership of such land in the suit of *Herron* v. *Baber*, as set forth in the above statement of facts, until his death, he accompanied such possession by the *bona fide* claim that he was entitled to the land thereunder, and hence such contract gave him *color* of title and constructive possession of the land to the extent of its metes and bounds, for a period of approximately thirty years. This relieves us from the consideration in this cause of the question of whether the said John H. Baber in fact performed said contract on his part so as to have acquired a valid title to said land. The inquiry stops short

of that with the ascertainment of the fact that he accompanied his possession aforesaid with the *bona fide* claim to have so done, and continued such possession unbroken for the statutory period.

It should be noted in connection with the question of the *bona fides* of the claim of title of John H. Baber under said contract (Exhibit A), that Silas J. Baber testified in this cause on November 26, 1913, in answer to interrogatories, as follows:

"18 Question: Did you ever know or hear of any contract of sale of your father's home place by your father William Baber to your brother, John H. Baber, during the life time of your father, William Baber?

"Answer: No, I never did hear of any such contract during my father's lifetime. * * *

"21 Question: Could your father William Baber write or read writing? Could he write his' name?

"Answer: He could not write and could not read writing and could not write his name.

"22 Question: Did your father, William Baber, have any one especially to attend to his business for him and do his writing for him?

"Answer: Yes.

"23 Question: Who was said person?

"Answer: I, Silas J. Baber, was the person, and the only person, who attended to his business and did his writing for him. I did it all the time he lived with me and he lived with me from the year 1872 to the time of his death in the year 1875.

"24 Question: Did you ever witness any contract in writing of sale, purporting to have been made by your father, William Baber, to your brother, John H. Baber, to your father's, William Baber's, home place in Albemarle county in the State of Virginia?

"Answer: No, I never did."

It will also have been noted, from the copy of Exhibit A, in the statement of facts above, that the name of S. J. Baber is signed thereto as the only witness. The effect of such testimony is to indirectly imply that the original writing evidenced by Exhibit A, was a forgery, but the testimony is noticeably scant in its reference to this subject. It is contained in the brief statement in the answer to the single question last above quoted. The witness is not asked about and he makes no reference to the specific contract in question. He does not explain his silence all these years as to this contract being a forgery; or how the forgery could have been perpetrated and the forged writing filed in a suit to which he and numerous others, jointly interested with him adverse in interest to the writing, were parties, and yet the forgery not be discovered or suspected or suggested; and how it should remain for him, by a broad general negative statement after the lapse of thirty-five years from the filing of such writing as a part of a court record in the suit aforesaid, to first state by indirection that it was a forgery. The answer too of Silas J. Baber, filed in the cause before us, contains no allegation that the writing in question was a forgery, does not directly charge John H. Baber or any one, indeed, with having forged it; but by indirection of statement seeks to create that impression. It is not by such character of allegation or of proof that a charge of this character can be established. The fact that such writing was so filed as aforesaid, subject to scrutiny by so many who, knowing that William Baber, Sr., could not read or write, would naturally look to see by whom it was witnessed, would, as it seems to us, have led to such witness being questioned about it and to the detection of the forgery long since, if it existed. This and the unexplained silence of the witness all these years, and the other circumstances surrounding the case, set forth in the statement of facts above, constitute a decided preponderance of evidence

against the appellees upon the issue that such writing was a forgery and was known to be such by John H. Baber. After this lapse of time, under the circumstances of this case, the latter must be taken to have considered such writing genuine and to have *bona fide* asserted his claim of title aforesaid thereunder.

Therefore, unless for some other reason it is found that the requisites of the statute of limitations were not complied with by the said John H. Baber, it is evident that he acquired complete title to the land in question under such statute in his lifetime, by adverse possession, and such title descended to the appellants, who are his heirs at law.

It is contended on the part of the appellees that the other requisites of the statute were not so complied with, in this, that there was no disseisin or ouster by said John H. Baber of his coparceners entitled to said land by descent from the said William Baber, Sr., deceased, because the pendency of said suit of *Herron* v. *Baber* prevented the running of the statute of limitations, and, indeed, any commencement of the running of such statute, in favor of John H. Baber, and preserved the rights of the appellees to such land asserted and involved in such suit from the bar of such statute.

This involves the consideration of the following questions, which will be passed upon in their order as stated below.

3. The possession of John H. Baber having been originally taken under the true owner, William Baber, Sr., was the claim of title of the former accompanying his said possession of the land for a continuous period of fifteen years and more before his death, such a clear, positive and continued disclaimer and disavowal of title of said William Baber, Sr., and of the heirs at law of the latter, as to constitute a disseisin or ouster of such heirs?

As said by Lacy, J., in delivering the opinion of this court in *Fry* v. *Payne*, 82 Va., at p. 761, 1 S. E. at p. 199: "* * *

the possession of one joint tenant, tenant in common, or parcener, is *prima facie* the possession of his fellow (and) it follows that the possession of one is never adverse to the title of the other, unless there be proved an actual ouster or disseisin or other act amounting to a total denial of the plaintiff's right as cotenant." To the same effect, *Purcell & Wife* v. *Wilson*, 4 Gratt. (45 Va.) 16; *Caperton* v. *Gregory*, 11 Gratt. (52 Va.) 508; *Buchanan* v. *King*, 22 Gratt. (63 Va.) 422; *Robinett* v. *Preston*, 2 Rob. (41 Va.) 273; *Hannon* v. *Hannon*, 9 Gratt. (50 Va.) 146; *Pillow* v. *Southwest, etc., Co.*, 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 804; *Chapman* v. *Chapman*, 91 Va. 409, 21 S. E. 813, 50 Am. St. Rep. 846; *County of Alleghany* v. *Parrish*, 93 Va. 615, 25 S. E. 882; *Nowlin* v. *Reynolds*, 25 Gratt. (66 Va.) 137, and many other Virginia cases on the subject.

As said by this court per opinion of Staples, J., in *Creekmur* v. *Creekmur*, 75 Va. 430, at p. 436: "The rule now is that where possession is originally taken or held under the true owner, a clear, positive and continued disclaimer and disavowal of title and assertion of an adverse right to be brought home to the knowledge of the party, are indispensable before any foundation can be laid for the operation of the statute of limitation. The statute does not begin to operate until the possession, before in privity with the title of the true owner, becomes tortuous (tortious) and wrongful by the disloyal acts of the occupying tenant, which must be open, continuous and notorious, so as to preclude any doubt of the character of the holding or the fact of knowledge on the part of the owner." See also authorities next above cited.

However, the notice to or knowledge of the coparceners, or others originally having privity of title with the disseisor, of his disclaimer aforesaid and assertion of an adverse right, required to be proved before the running of the statute of limitations will begin, need not be actual. It

may be constructive. *Stonestreet* v. *Doyle,* 75 Va. 356, at p. 378, 40 Am. Rep. 731; *Va. Coal, etc., Co.* v. *Hylton,* 115 Va. at p. 424, 79 S. E. 337, Ann. Cas. 1915a, 741. It may be presumed from a great lapse of time with other circumstances which may warrant such presumption. *Purcell & Wife* v. *Wilson, supra; Pillow* v. *Southwest, etc., Co., supra.* The proof of such fact is not required to be "so convincing as to preclude all doubt." *Reusens* v. *Lawson,* 91 Va. at p. 237, 21 S. E. at p. 350. It may be proved as any other fact involved in a civil case may be proved by circumstantial evidence, the probative value and sufficiency of the circumstantial evidence to sustain the burden of proof required (*i. e.,* by a preponderance of the evidence), being entirely with the jury. 1 Greenes Ev. (15 ed.), sec. 13 and note; 2 Whart. Ev., sec. 1246; Best Presumptions, sec. 190; *Ellis* v. *Buzzell,* 60 Me. 209, 211, 11 Am. Rep. 204, cited with approval in *Reusens* v. *Lawson, supra.*

On May 17, 1878, appellee, *Joseph E. Baber,* the plaintiff in the original bill in the cause before us, and Georgianna Green, under whom claim the appellees who are plaintiffs in the cross-bill filed in this cause, certainly had constructive notice of the disclaimer by John H. Baber of the common title and of the assertion by him of an adverse right aforesaid accompanying his possession of the land in question, by reason of their being then before the court in the causes of *Hernon* v. *Baber* and *Greene* v. *Baber,* heard together, and of the allegations of the answer of John H. Baber filed therein setting up such disclaimer and adverse right in bar of the relief of sale of said land for partition sought in such suits, as appears in detail from the above statement of facts. Joseph E. Baber is still living; Georgianna Greene lived until 1911. Joseph E. Baber from May 17, 1878, until he filed his bill in the cause before us, and Georgianna Greene from May 17, 1878, until her death, had constructive notice of said disclaimer and assertion of ad-

verse right by John H. Baber accompanying his open, no-torious and continuous possession of the land aforesaid. Moreover the *ante motem litam* assertion of such adverse right by John H. Baber in the suit of *Spiece* v. *Baber* and his obtaining an injunction on the ground that he was en-titled to said land under such adverse right, as set forth in the statement of facts above, while not of the same weight as evidence of constructive notice aforesaid to said Joseph. H. Baber and Georgianna Greene since they were not par-ties to the last named suit, was a notorious assertion of such adverse right, which being maintained as it was thereafter for so great a lapse of time, is a pregnant circumstance to be considered on the question of fact whether notice to and knowledge of the assertion thereof aforesaid is to be in-ferred or presumed to have been brought home to said Joseph H. Baber and Georgianna Greene. See *Caperton* v. *Gregory, supra; Purcell & Wife* v. *Wilson, supra; Clark* v. *Beard,* 59 W. Va. 669, 53 S. E. 597.

With respect to James K. Baber, under whom the peti-tioner appellee claims, as set forth in the above statement of facts, the question under consideration arises under a somewhat different aspect. The same conclusion reached in the next preceding paragraph applies to James K. Ba-ber, and hence to such petitioner claiming under him, how-ever, unless the fact that James K. Baber was a non-resi-dent of Virginia distinguishes the case as to him. He lived until 1910 and was on May 17, 1878, and thereafter until his death, not a resident of Virginia, but of West Virginia. An allusion is made in *Purcell & Wife* v. *Wilson, supra,* to the rule above adverted to, with respect to the presumption of the notice and knowledge aforesaid from lapse of time with other circumstances which may warrant such pre-sumption, and it is there stated that such presumption will not arise against those "laboring under disabilities;" but manifestly such allusion is to persons who fall within the

96

saving provisions of the statute on the subject of persons under disabilities and has reference to the time in which they may bring suit to assert their rights. (Sec. 2931, Code of Va.) ; and has no reference to non-residents.

Non-residents labor under no disability with respect to the right to institute or prosecute suit at any time to assert or preserve any right of action they may have. No such right is reserved to them by statute. On the contrary when proceeded against by order of publication, etc., their rights in this respect are restricted and limited by sections 2986 and 3233 of Code of Virginia. Therefore, the non-residence of James K. Baber has no bearing upon the question of fact as to whether the notoriety of the disclaimer and adverse claim of right aforesaid of John H. Baber, accompanying the actual possession of said land by the latter, as aforesaid, was such and so long continued as to affect the said James K. Baber with constructive notice thereof, save in so far as the distance he lived from the land and the adverse occupant and claimant and his lack of communication with those who knew such facts, may affect the question. But in view of the facility of communication in modern times, the known disposition of men to make inquiry within a reasonable time about rights of property and of their disposition to realize upon their interest in the estates of those from whom they inherit, the presumption seems reasonable that James K. Baber within a reasonable time after the death of his father, William Baber, Sr., made inquiry in Virginia with regard to said land and that by the year 1878, or 1879 at least, was informed of what the numerous other members of the family interested with him must be taken to have known, of the notorious disclaimer and adverse claim of title of the said John H. Baber accompanying his actual possession of the land aforesaid. Hence, under the circumstances of the cause before us, our conclusion is

that the said James K. Baber must be taken to have had the constructive notice and knowledge aforesaid from 1878 or 1879 until his death in 1910.

It should be noted that it is alleged in the said answer of Silas J. Baber, above mentioned, that "after the death of William Baber, said John H. Baber endeavored to buy out respondent's interest in the old home place, the last time during the occasion of the Confederate reunion in 1906 or 1907, the place of such offer being North Garden depot, in Albemarle county, Virginia, just about the time this respondent was about to catch the train for his home in Texas." No allegation is made of any letter having been written to him by John H. Baber on the subject of buying respondent's interest in the land.

In answer to interrogatories on April 30, 1912, (after the death of John H. Baber) said Silas J. Baber testified as follows:

"15 Question by counsel for plaintiff: After your father's death did your brother John H. Baber continue to occupy the said farm in Albemarle county? And during his said occupancy did he ever write a letter to you asking you at what price you would sell your interest in the said place? If so state the year the letter was written and state whether or not you now have said letter? And, if you have it not, state what became of it? If you state that you are unable to find said letter state the contents of same if you know what they were?

"Answer: Yes, John H. Baber continued to occupy the farm. Yes, he wrote me a letter asking me what I would take for my interest in the farm. This letter was written in 1887 and asked what I would take for my part of the old home place in Albemarle county. I have not got the letter now. It is lost and I am unable to find it. He asked me if I would sell my interest in the place and if so what I would take for it.

"16 Question by counsel for plaintiffs: Since the year 1887 have you or your brother, John H. Baber, had any further communication or conversation in regard to his proposing to purchase your interest in the old place in Albemarle county, and if so when, where and what was that communication or conversation in regard to the purchase of your interest in the said place?

"Answer: Yes, we had a conversation concerning the purchase by him of my interest to the place. I was in Virginia at the Confederate reunion in Richmond just a few years ago, I think it was in 1906 or 1907, and had a conversation at the North Garden depot in Albemarle county just as I was taking the train to leave and he asked me then if I would sell and if so what I would take for my interest in the place."

This testimony was objected to by appellants as inadmissible under section 3346, Code of Virginia, clause 2. In the view we take of the case it is unnecessary for us to pass upon that question.

Silas H. Baber was a party defendant to said suit of *Herron* v. *Baber,* and he was in May 1878, "before the court" in that suit, in which the answer of John H. Baber aforesaid was filed as aforesaid. He lived in Rockbridge county from 1871 or 1872 until 1882, four years after John H. Baber set up his claim of adverse ownership in said answer, three years after the injunction obtained by John H. Baber aforesaid. It is significant that Silas J. Baber does not deny in his answer aforesaid knowledge of said adverse claim of title by John H. Baber before his removal to Texas, nor does he deny that there was adverse possession by the latter, but contents himself with alleging on this subject that his father, William Baber, Sr., told him "that he was not getting any rent from the old place near Batesville, occupied by John H. Baber, which said rent was to be paid in the shape of one-half of the merchantable fruit

raised on said place and that up to a short time before his said father's death, he continued to complain to that effect, saying that the only reason he did not make John H. Baber vacate was because he, the said John H. Baber, was poor and had a large family to support," and that "if any acts (of) adverse possession were exercised by John H. Baber that such were not *brought home* to this respondent, who has been making his home since the year 1882 in the distant State of Texas." (Italics supplied). If the testimony of Silas J. Baber next above referred to were admissible in evidence it is in direct conflict with record evidence in the cause set forth in the above statement of facts showing that John H. Baber beyond question made the disclaimer and assertion of adverse title aforesaid and in view of the facts above stated such testimony is too vague and indefinite to out-weight the other testimony in the cause on the subject.

But it is contended for appellees that if the foregoing conclusions be correct, nevertheless the pendency of said suit of *Herron* v. *Baber* prevented the running, and indeed the commencement of the running, of the statute of limitations; that such suit, in equity and hence in contemplation of law, is still pending; and they rely on that suit to save them from the bar of such statute.

It is true that if the parties to the suit of *Herron* v. *Baber* had prosecuted their rights therein with reasonable diligence the pendency of that suit would have prevented the running of the statute of limitations in favor of the claim of title by adverse possession set up therein in defense of that suit by John H. Baber. However, in the view we take of the case it will not be necessary to enter upon the consideration of what was the effect of the order of court in 1892 dismissing the cause of *Greene* v. *Baber* from the docket under the five year statutory rule on the subject, when, in fact, the order was in

error in stating that nothing had been done in such cause save to continue it for more than five years; or of whether such order carried with it the dismissal of the cause of *Herron* v. *Baber* from the docket of the court. In our view of the case, the decision of the following question is decisive of the inquiry as to the right of appellees to rely on the suit of *Herron* v. *Baber* to save them from the bar of the statute of limitations aforesaid, namely:

4. Has the laches of the appellee, Joseph E. Baber, and of those under whom the other appellees claim as aforesaid, barred their right to rely upon said suit of *Herron* v. *Baber* to preserve the rights they assert in the cause before us, and likewise barred them from the assertion of the rights claimed by them in such last named cause?

The same rule with respect to laches being a bar to the institution of a suit in equity applies to the right to further prosecute a pending cause. *Dismal Swamp Land Co.* v. *McCauley's Adm'r.*, 85 Va. 16, 6 S. E. 697; *Harrison* v. *Gibson*, 23 Gratt. (64 Va.) 212; *Bargamin* v. *Clarke*, 20 Gratt. (61 Va.) 544; and many other Virginia decisions too numerous to cite.

The equity rule on this subject has been so often stated that it is unnecessary to restate it here. It is deemed sufficient to say that while mere lapse of time will not make this rule applicable, where the delay results in the death of parties and the loss of evidence, rendering it difficult to do justice between the parties, a court of equity will hold it "too late to ascertain the merits of the controversy * * * and will not interfere whatever may have been the original justice of the claim." *Hatcher* v. *Hall, supra.* Accordingly a court of equity will, in such case, refuse to grant relief in a cause which has been long pending, although originally instituted in due time, equally as it will, in such case, refuse to grant relief in a newly instituted suit.

In the cause before us, the nature of the original main question of fact at issue, to-wit, whether John H. Baber performed the contract, Exhibit A, in the lifetime of his mother and father, both of whom died in 1875, rendered the testimony of contemporary witnesses almost indispensable. Such testimony it seems was promptly taken by John H. Baber soon after the original suit of *Herron* v. *Baber* was instituted against him. This testimony has been since lost by the loss of the papers of such suit. Whether John H. Baber subsequently accompanied his possession of the land involved in this cause by the disclaimer of adverse title aforesaid rendered of especial importance his own testimony, concerning as it does his own personal action, and of considerable, although of lesser importance, the testimony of his former coparceners, on the question of their knowledge of his disclaimer and assertion of adverse title aforesaid.

This testimony has been lost to the appellants by the delay of appellees in prosecuting their alleged rights in the suit of *Herron* v. *Baber*, and in instituting the cause before us, until after the death of John H. Baber.

We cannot avoid the conclusion, therefore, that their laches has barred the appellees from the right to any relief in the premises.

For the foregoing reasons we are of opinion to reverse the decree complained of, and this court will enter such order as the court below should have entered dismissing the bill of the appellee and plaintiff, Joseph E. Baber, and all other proceedings, by petition and cross-bill and otherwise, on behalf of the other appellees in the court below.

*Reversed.*