# Richmond.

## JOHN DULL v. ERNEST DULL, ET ALS.

### November 13, 1924.

1. FRAUDS, STATUTE OF—*Parol Contract of Sale of Land—Requisites of the Contract.*—In order to relieve himself of the operation of the statute of frauds upon an alleged parol agreement of sale of land, the burden is upon the party asserting such parol sale to show that the agreement relied on was certain and definite; that the acts proved in part performance refer to, result from, and were done in pursuance of the agreement proved; and the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation.

2. APPEAL AND ERROR—*Parol Contract of Sale of Land—Reversal and Remand with Direction that an Issue Out of Chancery be Ordered where the Supreme Court of Appeals is not Satisfied that Justice had been Attained—Case at Bar.*—In the instant case, a suit for partition, defendant asserted a parol sale of the land in question to him by plaintiffs. The commissioner to whom the case was referred and who heard the witnesses orally found in favor of such sale, the trial judge, who did not have the witnesses before him, decreed against the sale.

   *Held:* That, as it was impossible to read the testimony and not entertain a serious doubt as to whether a just conclusion had been arrived at in the decree, the case would be reversed and remanded, with direction that an issue out of chancery be ordered to ascertain whether or not the alleged parol sale was in fact made.

3. APPEAL AND ERROR—*Remand—Direction of Issue Out of Chancery.*—Where in a chancery cause an issue of fact is involved and on appeal the appellate court is not satisfied that the ends of justice have been attained, it will reverse and remand the cause, with directions to empanel a jury to determine said issue.

Appeal from a decree of the Circuit Court of Augusta county. Decree for complainants. Defendant appeals.

*Reversed and remanded.*

The opinion states the case.

*Curry & Curry* and *Taylor McCoy*, for the appellant.

*Timberlake & Nelson*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

The appellees, Ernest Dull, Lewis Dull, Willa V. Hanger and W. E. Dull, filed their bill in this cause, praying for the partition of sixty-four and one-half acres of land, situated in Beverly Manor district of Augusta county, claiming they were entitled to said partition by reason of their having inherited an interest in the said land from their father, Alexander Dull.

The appellant, John Dull, a brother of appellees, was made defendant to the original bill upon process duly served, and filed his answer, denying the right of appellees to have partition of the land in controversy, and by way of cross-bill alleged his ownership of the sixty-four and one-half acres by virtue of a parol contract of sale thereof entered into by appellees.

It appears from the original bill, answer, cross-bill, and proceedings in this cause, that in the year 1890, Mrs. Mary A. Dull, the mother of Alexander Dull and Alonzo Dull, died seized and possessed of certain real estate. By the second clause of her will she made the following disposition of a portion of her estate:

"I bequeath the remainder of my land, namely, sixty-four and one-half acres, more or less, to my two sons, Alexander and Alonzo equally. The conditions of this bequest are, that the said Alexander is to take charge of his brother Alonzo and support him during his lifetime, and at the death of the said Alonzo, then the said Alexander Dull is to have the said Alonzo's

part of the estate. I mean by the word support as used above to include board, clothing, doctor's bills, funeral and all necessary expenses.''

On the 19th day of May, 1904, Alexander Dull departed this life, intestate, leaving surviving him his widow, appellant, appellees and Alonzo Dull.

In addition to the prayer for partition, the further prayer of the bill is that appellant be required to account for the rents and profits of the said land, he, as alleged, having been in sole and exclusive possession of the same since the death of their father, Alexander Dull.

In the answer of appellant, which is treated as a cross-bill, he also alleges that his uncle, Alonzo Dull, was an idiot and not capable of caring for himself in any particular, and required the greatest care and attention; that for several years prior to the death of his father appellant was employed by Alexander Dull to work on the farm and to assist in the care of Alonzo Dull; that appellant was thus employed for eleven years at the rate of $200.00 per year for the first nine years, and at $300.00 per year for the last two years; and that the said Alexander Dull was, at the time of his death, indebted to appellant in the sum of $1,850.00, and that there were debts against the estate amounting approximately to $800.00.

Appellant further avers that the parol contract of sale of the land relied on by him is, in substance, as follows: That in order to carry out the provisions of the will of Mary A. Dull, in regard to Alonzo Dull, and in order to properly maintain and support their mother, appellees agreed that appellant was to have full custody and control of Alonzo Dull, to support him and care for all his wants until his death, and to further support the mother of the parties, who was an

invalid, and to pay off all indebtedness against the estate; and that they would transfer and convey all of their right, title and interest in the estate of Alexander Dull to appellant; that pursuant to this agreement, appellant provided for and took care of his mother until her death on November 30, 1909, and provided for Alonzo Dull in every particular until his death, which occurred on December 4, 1911, and that he then fulfilled the further provisions of the contract by paying all the expenses incident to the last illness and death of the said Alonzo Dull.

While conceding that a contract was entered into by them with appellant, appellees contend that the contract was that appellant was to have all the personal property on the place, to have all the profits thereof, to pay all the debts against the estate, to care for their mother and Alonzo Dull during his lifetime.

The cause having been matured at rules, on March 10, 1913, the chancellor entered a decree referring the cause to Hon. N. H. Kerr, a master commissioner, "to take, state and settle the following accounts:

"1. Of the real estate in the bill and proceedings mentioned and the respective interests of the parties therein;

"2. The lien thereon, or upon any of the respective interests, in the order of priority, including unpaid or delinquent taxes;

"3. Whether the same is susceptible of partition in kind among the parties owning the same, or whether it will be to the interest of all the parties that the land should be sold and the proceeds divided;

"4. An account of the rents and profits of said land in the hands of the defendant, John Dull;

"5. Any other matters deemed pertinent by the com-

missioner, or required to be specially stated by any party in interest.''

By a subsequent decree, the parties litigant were granted leave to present before the commissioner any evidence in support of the allegations contained in the original bill and the cross-bill. Pursuant to these decrees the commissioner, after voluminous depositions were taken, extending over a period of several years, filed his report stating his conclusions as follows:

''First. Commissioner is of opinion that M. A. Dull, the grandmother of the parties in this suit and the mother of Alexander and Alonzo Dull, by her will in which she gave a half interest in her property to Alexander Dull and the other half to Alonzo Dull, but provided that if Alexander Dull took care of, provided for, and paid all the expenses of Alonzo Dull during his, Alonzo's, lifetime, that then he was to have Alonzo's one-half interest, by this, creating a charge upon the entire estate, certainly as to a half interest in it, and in the opinion of your commissioner a charge against the whole, and Alexander Dull having died before he had discharged the trust or obligation incumbent upon him, left his obligation to be settled by some one else for him before his heirs could take an interest in the property, and that when John Dull contracted for the care of Alonzo he was doing nothing more than, in his father's place and stead, discharging the obligation created by the will as to the estate, and independent of any alleged contract he is entitled to stand in the shoes of Alexander Dull, who was charged with these duties as a prerequisite as to the ownership of the property.

''Second. Commissioner is of opinion, and so reports, that from all the evidence the small farm in question, and in view of the taxation that the personal property,

was not of the value as placed upon it by the heirs, but that under ordinary circumstances its value could not have been over $200.00 or $300.00 at the outside; that the farm in question was assessed for the year 1904 at $1,832.00, and from the evidence taken and the location of this farm that $30.00 an acre, in 1904, was a fair valuation for the land.

"Commissioner is further of opinion, and so reports, that, from the evidence, he is satisfied that there was the contract between the heirs and John Dull, as testified to by John Dull, and as claimed by him in his cross-bill and answer, because it was not only testified to by persons who were present, but in the very nature of things is borne out by subsequent events.

"The estate owed John Dull personally certainly over $1,800.00. There were debts outside of this amounting to about $800.00. The care of the invalid mother and of Alonzo Dull was, as is shown by the evidence, a tremendous undertaking, and no man outside of an insane asylum would ever have undertaken to do this for the small amount of personal property and the rents and issues of the small farm.

"The subsequent conduct of all the parties in interest or claiming interest would seem to bear out John Dull's contention, because they never interfered or bothered in any way until after he had gone through with this trying ordeal for many years. The principles involved in this case, it seems to your commissioner, are very well discussed in the case of *Reed* v. *Reed*, 108 Va. page 790, 62 S. E. 792, in which the court says that the requirements as to whether or not a contract was of such a character as to remove it from the operation of the statute of frauds and upon princi-

ples upon which a court of equity would enforce a parol agreement for the sale of land are as follows:

"First. 'The parol agreement relied on must be certain and definite.'

"If we revert to the evidence in the case under consideration and believe that any sort of contract at all was entered into, then it is definite and certain in its terms. It is more than this. It is an extremely difficult contract to be performed by the party undertaking it. It is extremely equitable and just to the other party to it.

"Second. 'The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved.'

"Commissioner submits that this requirement has certainly been fully met by the facts in this case. John Dull did everything and there is no denial of it from any source, carrying out what he has stated was his part of the contract, and in doing this can it be doubted that all these acts done by him, the merging of his debit, the payment of the other debts, and the care and attention of the mother and uncle did refer to, result from, and were made in pursuance of the agreement proved.

"Third. 'The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation.'

"The court cannot read the evidence in this case and not be fully convinced that a refusal of the full execution of the contract as claimed for by John Dull would operate as a fraud and place him in a situation which does not lie in compensation. A refusal to carry out the contract fully would cause him to lose his own debit, all the money he had paid for the estate, the many

years of unceasing care and attention to those whom he was required to look after, and the permanent improvement he has put upon the land.

"It is also true if the heirs had hired some one to take care of Alonzo Dull alone it would have taken more than the entire estate twice over. And, using the language of the court and the commissioner in the case above cited, his conclusions are that the contract between the parties has been proven with certainty and that it should be enforced. Those who are resisting its enforcement having stood by for more than eleven years without raising a finger to aid this brother who has borne the whole burden, expense of caring for this afflicted uncle and mother, and finally, that they are not hurt by its enforcement, for if he had been placed in the hands of others for a stipulated sum or in an asylum, all of it would have fallen far short of paying his expenses and there would have been nothing left for his relatives.

"It will be noted that five matters of reference were directed to be reported on by your commissioner, and all of the foregoing applies to the first matter of reference, which was to state the real estate in the bill and proceedings mentioned and the respective interest of the parties there, and this has therefore been fully gone into.

"The second matter of reference required your commissioner to state the liens on said real estate or upon any of the respective interests in the order of their priority, including unpaid or delinquent taxes. The liens and the indebtedness of the estate, as hereinbefore stated, have been fully paid by John Dull, and if the opinion of your commissioner as arrived at is correct, then the liens as against any of the other heirs would amount to nothing.

"Under the third head, commissioner is directed to state whether the land is susceptible of partition, etc. It can be readily seen that this is unnecessary to be stated if commissioner is correct in his findings, and the same is true of the fourth matter of reference as to the statements showing rents and profits of said land in the hands of John Dull.

"There being no other matters deemed pertinent or required to be stated, this report is

"Respectfully submitted by

"H. H. KERR,

"Commissioner in Chancery."

To this report the appellees filed five exceptions, which exceptions were sustained by the chancellor, and a decree entered disposing of the same as follows:

"1. That the said exceptions are well taken and should be sustained.

"2. That the claims of the defendant that the estate of Alexander Dull, his father, is indebted to him, should be rejected.

"3. That the claim of John Dull, the defendant, to the fee simple in the real estate in the bill and proceedings mentioned has not been sustained and should be denied, it is accordingly adjudged, ordered and decreed as follows:

"First: That the said exceptions be and they are hereby sustained;

"Second: That the claim of John Dull of indebtedness of the estate of Alexander Dull to him be and the same is hereby rejected;

"Third: That the claim of said John Dull to the said real estate under his alleged agreement with the other heirs at law of Alexander Dull, deceased, be and the same is hereby denied, and that he account for the

rents and profits of said real estate from the date of the death of Alonzo Dull;

"Fourth: That the plaintiffs recover of said John Dull the costs of this suit accrued as of the date of entry of this decree."

The decree contained the further provisions:

"Fifth: That this cause be and the same is hereby referred to one of the master commissioners of this court, who, after ten days' notice to the parties or their counsel of record, shall enquire and report as follows:

"1. The amount of the rents and profits of the said real estate for which said John Dull is liable to the plaintiffs, Ernest Dull, W. E. Dull, Lewis H. Dull and Mrs. W. V. Hanger, and the amount of the costs accrued to this date;

"2. Whether said real estate is susceptible of partition in kind among the persons entitled thereto, or whether the interests of all the parties would be best subserved by a sale of said land and a division of the proceeds;

"3. Any other matters deemed pertinent by said commissioner or required by any party in interest to be specially stated."

From that decree this appeal was allowed.

The record in this cause reveals not only a bitter controversy between brothers and sisters, but lays bare the mental and physical deficiency of a member of the family confided to their care and keeping. To detail the habits and condition of Alonzo Dull, as testified to by witnesses introduced by the appellant, would cause a state of nausea to ensue.

No good purpose can result from a discussion of the evidence. There is a difference between us as to the proper legal conclusions to be drawn therefrom. Suf-

fice it to say that the record fairly bristles with conflicts of evidence, charges and counter charges of derelictions and failures.

As far as the proposition of law involved in this case is concerned, it is one of easy solution, and has been correctly stated by the commissioner.

[1-3] In order to relieve himself of the operation of the statute of frauds upon the alleged parol agreement, the burden is upon the appellant to show that the agreement relied on was certain and definite; that the acts proved in part performance refer to, result from, and were done in pursuance of the agreement proved, and that the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. *Reed* v. *Reed*, 108 Va. 790, 62 S. E. 792. When, however, we come to the proof, the report of the master commissioner, a lawyer of experience and ability, and the opinion and decision of the eminent judge of the trial court, we are confronted with a most difficult situation. To our mind, however, it is impossible to read the conflicting testimony of the litigants, together with the conflicting evidence of their principal witnesses, and not entertain a serious doubt as to whether a just conclusion has been arrived at in the decree under review; nor are we satisfied that appellant is entitled to a decree in his favor.

In the instant case the judge of the trial court did not have before him the witnesses who testified. He was not in a position to judge of their feeling, temper, deportment, bias, or prejudice. His conclusions were arrived at, just as we must do if we come to a conclusion, from reading the cold and unresponsive print. On the other hand it was the duty of the master commissioner

to hear the witnesses orally, to judge of their candor, to note their intelligence or lack of intelligence, to observe their demeanor while testifying, and to reach his conclusions in the matter, aided by these indices of right and wrong, truth or falsehood.

As was said by Judge Whittle in *Hook* v. *Hook,* 126 Va. 253, 101 S. E. 225, it can with equal force and propriety be said in this case: "In these circumstances we feel that the truth of the case can best be determined by submitting the issue to the arbitrament of a jury, who, after seeing and hearing the parties and their witnesses, can form a correct judgment of their intelligence, character and credibility, and arrive at a just conclusion on the merits of the controversy. The direction of such an issue in such case is in accord with the decisions of this court for more than a century. Many of the authorities will be found in notes to *Lovell* v. *Gold's Adm'r,* 25 Gratt. (66 Va.) 473."

The rule is well settled that where the appellate court on appeal "is not satisfied that the ends of justice have been attained, it will reverse and remand the cause with directions to empanel a jury to determine the issue." *Shoemaker* v. *Shoemaker,* 112 Va. 798, 72 S. E. 684.

Moved by these considerations, we are of the opinion that the decree of the Circuit Court of Augusta county should be reversed, and the cause remanded, with direction that an issue out of chancery be ordered to be tried by a jury, to ascertain whether or not the appellant, John Dull, did, in fact, enter into a parol agreement with the appellees for the conveyance of the sixty-four and one-half acres of land, as set forth in the pleadings in this cause.

And upon the trial of that issue, John Dull, upon whom the burden of proof rests, shall occupy the posi-

tion of plaintiff and Ernest Dull, Lewis Dull and Willa
V. Hanger and W. F. Dull shall occupy the position of
defendants. Until this main issue be determined no
reference to a commissioner need be had.

*Reversed and remanded.*